716 So.2d 417 (1998)
STATE of Louisiana
v.
Joseph S. HAMPTON.
No. 97 KA 2096.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
*418 Terry Boudreaux, Gretna, and Walter P. Reed, District Attorney, Gretna, for Appellee State.
Peggy Sullivan, West Monroe, for Appellant Defendant Joseph S. Hampton.
Before FOIL, WHIPPLE and KUHN, JJ.
FOIL, Judge.
Defendant, Joseph S. Hampton, was charged by bill of information with oral sexual battery (Count 1), a violation of La. R.S. 14:43.3, and with sexual battery (Count 2), a violation of La. R.S. 14:43.1. He pled not guilty to both counts. After a trial, the jury returned guilty verdicts on each count. Defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal, which were denied by the trial court. Subsequently, defendant waived legal delays and was sentenced to seven years at hard labor on Count 1 and seven years at hard labor, without benefit of probation, parole or suspension of sentence on Count 2. Defendant did not make an oral or written motion to reconsider his sentences. Defendant now appeals, arguing that the evidence was insufficient to support the verdicts, that the record did not reflect sufficient reasons for the sentences and that the sentences were excessive.

FACTS
On July 6, 1997, a group of people gathered to socialize and play cards at a Slidell home. They included the homeowner, Cliff Falterman and his adolescent daughter, Danielle, defendant Joseph Hampton and his wife Cheryl, who lived at the home, and Elaine Davey and her twelve-year old daughter, K.P. The group played cards until the early morning hours of July 7, when most went to bedrooms in the home. K.P.'s mother and Cliff retired to his bedroom. Danielle went to sleep in her room. Defendant's wife went into her bedroom to watch taped television programs. Only defendant and K.P. were left in the kitchen playing cards. Defendant suggested that they move to the sofa in the adjoining den to watch television. They did so and sat on the opposite ends of the sofa. The young girl covered herself with a blanket. During the next couple of hours defendant allegedly touched the girl's genitals by performing acts of digital penetration of her vagina and cunnilingus. During this time, several adults, including K.P.'s mother and defendant's wife entered the room. No one saw any inappropriate activity. Nor did they see K.P. or defendant move quickly or reposition themselves on the sofa. A few days later K.P. told her mother of the acts. Consequently, defendant was arrested and charged with performing acts of sexual battery and oral sexual battery. Defendant gave a statement denying the offenses.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number one, defendant contends that the evidence presented was insufficient to support the guilty verdicts. In assignment of error number two, defendant argues that the trial court erred in denying his motions for new trial and for post-verdict judgment of acquittal, in which he argued that there was insufficient evidence to support the verdicts. In his brief, defendant specifically contends that the state's entire case rested upon the victim's testimony and that the evidence shows the victim was lying about the allegations. The state argues that the testimony of the victim was sufficient to support the convictions and that the jury's credibility determinations should not be overturned.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). See also La.Code Crim. P. art. 821(B).
The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or part, the testimony of any witness. Moreover, when there is conflicting *419 testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 472 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
La. R.S. 14:43.3 provides for the crime of oral sexual battery as follows:
A. Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, when the offender either compels the other person to submit by placing the person in fear of receiving bodily harm, or when the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
B. Lack of knowledge of the victim's age shall not be a defense.
La. R.S. 14:43.1 provides for the offense of sexual battery as follows:
A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
B. Lack of knowledge of the victim's age shall not be a defense. However, where the victim is under seventeen, normal medical treatment or normal sanitary care of an infant shall not be construed as an offense under the provisions of this Section.
At trial, the victim, K.P., testified that defendant gave her alcoholic beverages and some pills which he said "would make her horny." The girl drank the alcohol and took the pills, a decision she regretted. Then, defendant started asking her sexual questions. When they finished playing cards, he asked her to move from the kitchen table to the sofa in the den and she agreed. While she was on the sofa, he put his fingers into her vagina and also inserted his finger into her rectum while he performed oral sex on her. The victim further stated that she was twelve years old at the time these acts occurred.
K.P. acknowledged that several people in the home, including defendant's wife and her mother, periodically walked into the den. K.P. explained that the room was dark, that the only light came from the television, and that defendant was able to see shadows on the wall and anticipate when someone would enter the room from the hallway. The victim further stated that she was covered with a blanket and laying on the sofa when this incident occurred. She admitted that defendant left the room several times to talk to his wife in their bedroom. After about two hours, K.P. went into Danielle's bedroom. There, she woke Danielle, her friend, and told her about the sexual acts. The next morning when defendant saw K.P., he asked her if she remembered the events of the night before. She told him that she did not. During her testimony, the victim admitted that defendant did not threaten or force her into submitting to the acts. She also admitted that she went to the bathroom a few times during the time period of the acts, and even saw her mother during one of these trips to the bathroom.
When asked about her past behavior, K.P. admitted that about a year and a half before this incident, she had taken pills and had to have her stomach pumped out. However, after that episode, she started going to church and changed. She also admitted that she previously had physical fights with her mother.
*420 Danielle Falterman testified that the victim woke her up around 6:00 a.m. on July 7. K.P. said that defendant had given her a drink and a pill. Danielle could smell alcohol on K.P.'s breath. K.P. then told her of the sexual acts and said she thought defendant would stop when she left the room three times, but he did not. Two or three days later when Danielle learned that K.P. had revealed the acts, she asked defendant directly if he had performed the specific sexual acts with her friend. Defendant replied that K.P. "told you the truth." On cross-examination, Danielle admitted that defendant had caught her walking with boys in the neighborhood when she was supposed to be at a girlfriend's house. He had also caught her smoking.
K.P.'s mother, Elaine Davey, testified that after playing cards she left the kitchen and went with Cliff into his bedroom. Once during the night, she went back into the den and saw her daughter and defendant on opposite ends of the sofa. Another time she left the bedroom and found her daughter coming out of the bathroom. Although K.P. "looked out of it" she believed that her daughter's appearance was from being up so late. The next day Elaine and her daughter left, but later returned to Cliff's home. K.P. did not want to go back to the home, but Elaine forced her to go with her. Elaine admitted having problems with K.P. in the past, including physical fights. However, she denied telling Mrs. Hampton and her daughter that K.P. was becoming unmanageable.
Mrs. Hampton explained that she and her husband lived in the home and agreed to stay with Danielle while Cliff was working offshore. Mrs. Hampton testified that her husband, who was many years younger than she, frequently spent nights sitting on the sofa. She explained that he had a back injury and was more comfortable sitting than lying down. Although defendant took medication, none of his pills were similar to the one K.P. described as the pill she received from defendant. Mrs. Hampton also related a conversation she had with K.P.'s mother in which Ms. Davey stated she was having behavioral problems with K.P. and needed to take her back to a therapist.
As to the night of the alleged acts, Mrs. Hampton explained that she was in her bedroom watching taped soap opera programs. Several times she went into the kitchen for something to drink and never saw her husband or K.P. move. When Mrs. Hampton saw K.P. on one end of the sofa covered with a blanket, she thought K.P. was asleep. Defendant had his hands behind his head and was leaning back on the sofa. About 5:15 a.m. when she heard K.P. go into Danielle's bedroom, Mrs. Hampton got up and checked on her husband. She found him asleep on the sofa. She further testified that when the lights were off in the room, no shadows of persons in the hallway would appear.
Mrs. Hampton admitted that when K.P. made the allegations, the young girl claimed to be "too messed up to leave the den and go into Danielle's bedroom." However, Mrs. Hampton responded that the girl was "not too messed up to walk back" to the sofa three times to let defendant continue the acts.
Bridget Finch, Mrs. Hampton's daughter, testified that she was at her mother's residence a few days before the alleged incident. There, she met K.P.'s mother, Ms. Davey, and heard her complain that K.P. had hit her and that she needed to take K.P. to a therapist.
Sue Parker of the St. Tammany Parish Sheriff's Office investigated the allegations of sexual abuse. She took K.P.'s statement. The girl described the pill she was given by defendant and said that the color was blue. Officer Parker also took a statement from Danielle, her father Cliff, and defendant. In his statement, defendant denied the incidents. Although he admitted that he took medication regularly, he denied giving pills to K.P.
Dr. Jonette Mayer, a pediatrician at Ochsner Hospital, testified that she conducted a gynecological examination of K.P. four days after the alleged acts. No physical injury or findings could be made.
Several of defendant's friends and coworkers testified on his behalf. Each stated that defendant had a reputation in the community for being truthful and that they had *421 never heard anything negative about him. One friend testified that he would not be concerned about leaving his children with defendant.
Defendant testified that he had a back injury and took medication for the pain. Although he had previously taken blue colored pills, he had finished that particular medication about a month before the alleged acts. He denied talking to the girl about and performing sexual acts. He also denied admitting to Danielle that he had performed the acts on K.P. Defendant also explained that he would not have been able to see anyone before they entered the dark room. To further support his innocence, defendant contended that when he was confronted, he and his wife offered to pay for a medical examination of K.P. to prove that he did not perform the acts. However, on rebuttal testimony, the victim denied that defendant made this offer the night he was confronted.
On appeal, this Court will not reassess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Babin, 93-1361 (La.App. 1st Cir. 5/20/94), 637 So.2d 814, 818-819, writ denied, 94-1563 (La.10/28/94), 644 So.2d 649. The fact that the jury found defendant guilty indicates that they accepted the victim's testimony and rejected defendant's testimony wherein he denied committing the offenses. We also note that in addition to the victim's testimony, the evidence included testimony of the victim's mother and friend that K.P. told them of the acts. We will not reassess the credibility of the witnesses or reweigh the evidence.
After carefully reviewing all of the evidence in the light most favorable to the state, we find that the evidence proved beyond a reasonable doubt all of the elements of the offenses of oral sexual battery and sexual battery.
These assignments of error lack merit.

EXCESSIVE SENTENCES
In assignment of error number three, defendant contends that his sentences are excessive and that the trial court did not give sufficient reasons for the sentences.
Initially, we note that defendant concedes in his brief that he did not make a motion to reconsider his sentences. However, he contends that his attorney's statement after sentencing that "we would advise the Court of our intention to appeal ..." constituted an objection sufficient to preserve a review of a bare claim of excessiveness under State v. Mims, 619 So.2d 1059, 1060 (La.1993).
This court has held that under the clear language of La.Code Crim. P. art. 881.1(D), the failure to file or make a motion to reconsider sentence precludes defendant from raising an excessiveness argument on appeal. See State v. Duncan, 94-1563, p. 2 (La.App. 1st Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc). Defense counsel did not make an objection regarding the sentences. He merely gave oral notice of the intent to appeal. Thus, there was no statement which arguably could be considered as a "bare claim of excessiveness" under State v. Mims, 619 So.2d at 1060, or an objection that the trial court failed to give reasons for the sentences. Thus, this court will not consider defendant's arguments regarding his sentences.
CONVICTION AND SENTENCES AFFIRMED.
KUHN, J., concurs and assigns reasons.
KUHN, Judge, concurring.
I agree with that portion of the majority opinion addressing the sufficiency of the evidence and affirming defendant's convictions. The evidence proves beyond a reasonable doubt all of the elements of the offenses of oral sexual battery and sexual battery.
I concur with the majority in its affirmation of the defendant's sentences. Defendant contends on appeal that his sentences are excessive. However, the majority declines to review this claim because defense counsel failed to make an objection regarding the sentences. The majority holds that since defendant did not file or make a motion to reconsider his sentence, he is barred procedurally by La.C.Cr.P. art. 881.1(D) from having his assignment of error as to excessive sentence reviewed on appeal.
*422 I believe that La.C.Cr.P. article 881.1(D) conflicts with La. Const. Art. 1, § 19, which guarantees that no one shall be subjected to imprisonment without the right to judicial review based upon a complete record. See State v. LeBouef, 97-0902, p. 2 (La.App. 1st Cir. 2/20/98); 708 So.2d 808. (dissenting opinion, Shortess, J.) However, a review of the record before us reveals the imposition of the sentences in this matter is not an abuse of the trial court's discretion. The sentences are not excessive in light of the serious nature of the crimes and the possible maximum sentences that could have been imposed. I find no merit in defendant's claim that his sentences are excessive.