CARTER, C.J.
|2The defendant, William Ray Lilly, was charged by bill of information with one count of sexual battery, in violation of Louisiana Revised Statutes Section 14:43.1. The defendant pled not guilty and, following a jury trial, was found guilty as charged. He then filed motions for a new trial and postverdict judgment of acquittal, which were both denied. After denial of those motions, the defendant waived sentencing delays and the trial court sentenced him to thirty-five years at hard labor without benefit of parole. He was also ordered to register as a sex offender. The defendant then filed a motion to reconsider sentence, which was also denied. He now appeals, designating seven assignments of error. We affirm the conviction and sentence.
STATEMENT OF FACTS
On August 11, 2010, the defendant and his wife, C.L.,[1] babysat C.L.’s grandchildren, S.D. and her baby brother, while their mother was at work. S.D., the victim, was four years old at the time. That evening, S.D. allegedly told her mother, H.D., that while she was at her grandmother’s house that day, the defendant touched her on her vagina. She testified at trial that while she was standing in the doorway of the kitchen, the defendant hugged her and reached under her clothes and touched her on her “privates” using his finger. The day after the incident, on August 12, 2010, S.D.’s mother took her to the St. Tammany Parish Sheriffs Office (STPSO) to make a report and to the Children At Risk Evaluation (CARE) Center at Children’s Hospital in New Orleans for an exam. At the CARE Center, S.D. was examined by Dr. Ellie Wetzman. S.D.’s mother also took her to the Children’s Advocacy Center (CAC) in Coving-ton, where she was interviewed |sby Jo Beth Rickels, a forensic interviewer. *50 Rickels’s interview with S.D. was recorded and played at trial.
Detective Scott Davis from the STPSO investigated S.D.’s claim. He observed the interview at the CAC and then met with S.D.’s mother to place a phone call to the defendant on August 13, 2010. The defendant voluntarily appeared at the police station at the request of Detective Davis on August 16, 2010. In a recorded statement, the defendant admitted to Detective Davis that he had touched S.D. on her vagina. That statement was played for the jury. After the defendant admitted touching the victim, he was arrested. While in jail, the defendant made several phone calls to his wife, which were also recorded and played for the jury.
At the trial, the defendant denied intentionally touching S.D. He recalled a different set of facts than what he had admitted to in the recorded statement. He claimed that his confession was obtained through coercion by Detective Davis and that he was forced to change his version of events to what the detective told him to say. The defendant and his wife also testified at trial about the defendant’s serious alcohol addiction and how that affected his behavior on the day of the incident, as well as in the days afterward, when the defendant was in custody of the STPSO.
ASSIGNMENTS OF ERROR
NO. 1 — DENIAL OF CHALLENGE FOR CAUSE TO PROSPECTIVE JUROR
In his first assignment of error, the defendant contends that the trial court committed reversible error by refusing to grant his challenge for cause to a prospective juror who indicated during voir dire examination that he would shift the burden of proof to the defendant to testify or otherwise produce evidence of innocence in order to consider a “not guilty” verdict, thereby forcing the defendant [4to exhaust all of his peremptory challenges. The defendant contends that as a consequence of the failure to grant the challenge for cause, he was denied due process of law and his right to be tried by a fair and impartial jury of his peers.
A trial court is accorded great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Martin, 558 So.2d 654, 658 (La.App. 1st Cir.), unit denied, 564 So.2d 318 (La.1990). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. Martin, 558 So.2d at 658. However, a trial court’s ruling on a motion to strike jurors for cause is afforded broad discretion because of the court’s ability to get a first-person impression of prospective jurors during voir dire. State v. Brown, 05-1676 (La.App. 1 Cir. 5/5/06), 935 So.2d 211, 214, writ denied, 06-1586 (La.1/8/07), 948 So.2d 121.
Prejudice is presumed when a trial court erroneously denies a challenge for cause and the defendant ultimately exhausts his peremptory challenges. State v. Kang, 02-2812 (La.10/21/03), 859 So.2d 649, 651. This is because an erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. Kang, 859 So.2d at 652. To prove there has been an error warranting reversal of a conviction, a defendant need only show: (1) the trial court’s erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. See Kang, 859 So.2d *51 at 652. Since the defendant in this case exhausted all of his peremptory challenges, we need only consider the issue of whether the trial judge erroneously denied the defendant’s challenge for cause.
| ¡¿Louisiana Code of Criminal Procedure article 797 provides, in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
[[Image here]]
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
[[Image here]]
(4) The juror will not accept the law as given to him by the court[.]
The defendant points to four prospective jurors — Diane Stein, Dominick Palmisano, Priscilla Hill, and Kenneth Miller — who, he alleges, indicated an inability to be impartial, or that they would hold it against the defendant if he did not testify on his own behalf or otherwise prove that he did not commit the crime. The defendant complains that challenges for cause to Stein, Palmisano, and Hill were granted, but the defendant’s challenge to Miller was denied, forcing him to exercise a peremptory challenge. The defendant argues that there was no difference in attitude among these four prospective jurors toward the burden of proof, presumption of innocence, and failure to testify or put on a defense. However, our examination of the voir dire transcript shows that there were distinctions.
Stein, Palmisano, and Hill indicated they could not be impartial in the present ease if the defendant refused to testify or that the defendant would have to prove that he did not commit the crime charged. In contrast, Miller said if he was accused of such a crime, he would do anything to prove his innocence but that he could consider a vote of not guilty if the State failed to prove its case beyond a reasonable doubt.
|fiThe court dismissed Stein, Palmisano, and Hill from the jury panel after all were challenged for cause. The defendant claims that Miller should also have been dismissed for cause. The trial judge agreed with the State that even though Miller expressed his opinion that he would want to do everything to exonerate himself if he were faced with a similar situation, he did not indicate that the defendant would have to exonerate himself in violation of the constitutional presumption of innocence.
The trial judge is vested with broad discretion in ruling on challenges for cause, and only where it appears, upon review of the voir dire examination as a whole, that the judge’s exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused, will the ruling of the trial judge be reversed. See State v. Lee, 98-2810 (La.5/23/94), 637 So.2d 102, 108.
The totality of Miller’s responses demonstrated a willingness and ability to decide the case impartially according to the law and the evidence, and his responses as a whole did not reveal facts from which bias, prejudice, or inability to render judgment according to the law could reasonably be inferred. Thus, after a review of the record of voir dire as a whole, it is clear that the trial court did not abuse its broad discretion in denying the defendant’s challenge for cause as to prospective juror Miller.
*52 This assignment of error is without merit.
NO. 2 — DENIAL OF MOTION IN LIMINE RE: MANDATORY MINIMUM SENTENCE
In his second assignment of error, the defendant argues that the trial court committed reversible error by granting the State’s motion in limine to prevent him from informing the jury of the mandatory minimum sentence required in the enhanced sentencing provision of Louisiana Revised Statutes Section 14:43.1, [ 7under which he was convicted and later sentenced. Specifically, the defendant argues that if he was found guilty under the sexual battery statute, the jury must have found that the victim was under thirteen years of age and the defendant was over seventeen years of age, and because the enhanced penalty provision of that statute did not allow the trial court any sentencing discretion to impose less than twenty-five years at hard labor without benefit of parole, probation or suspension of sentence, his was a mandatory sentence. Louisiana Revised Statutes Section 14:43.1(0(2) provides:
Whoever commits the crime of sexual battery on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
The general rule is that the jury need not be told of the applicable penalty on conviction because the imposition of sentence is solely within the province of the judge, and is not a function of the jury, which is concerned with the guilt or innocence of the accused. State v. Albert, 430 So.2d 1279, 1286 (La.App. 1st Cir.), writ denied, 433 So.2d 711 (La.1983) (case concerned crime of production of marijuana, which carried a penalty of imprisonment at hard labor up to ten years and a possible fine of not more than $15,000). Argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefore, and to the law applicable to the case. La.Code Crim. Proc. Ann. art. 774; See also State v. White, 399 So.2d 172, 177 (La.1981) (case concerned crime of manslaughter, which carried a penalty of imprisonment at hard labor for not more than forty years). However, when the penalty imposed by the statute is a mandatory one, the trial judge must inform the jury of the penalty on request of the defendant, and must permit the defense to |sargue the penalty to the jury. See State v. Washington, 367 So.2d 4 (La.1978) (case concerned crime of distribution of heroin, which carried a mandatory penalty of life imprisonment). In other than capital cases and cases carrying mandatory penalties, sentencing regulations form no part of the “law applicable to the case.” See White, 399 So.2d at 177 (citing State v. Harris, 258 La. 720, 247 So.2d 847, 850 (1971) (case concerned crime of armed robbery, which carried a sentencing range of imprisonment at hard labor for a minimum of five years and a maximum of ninety-nine years)).
The defendant argues that the trial court granted the State’s motion based only on an absence of case law mandating that the jury be informed of the penalty in cases other than those involving life imprisonment or the death penalty. The defendant’s position is that as mandatory minimum sentences become more severe, the time has come to include jury instructions on these sentences, at least to the *53 extent of informing juries of the mandatory minimum, and that the underlying rationale of established Louisiana jurisprudence concerning mandatory sentences is applicable and should be extended to mandatory minimum sentences as well. See White, 399 So.2d at 177; State v. Williams, 392 So.2d 619, 630-31 (La.1980) (Dennis, J., dissenting) (capital case); Washington, 367 So.2d at 4; State v. Milby, 345 So.2d 18, 21 (La.1977) (concerned crime of second degree murder, which carried mandatory life imprisonment).
Where the sentencing provision is not mandatory, the trial court has the discretion either to permit or to deny argument that would disclose to the jury the range of sentence. See State v. Williams, 420 So.2d 1116, 1122 (La.1982) (case concerned crime of armed robbery, which carried a sentencing range of imprisonment at hard labor for a minimum of five years and a maximum of ninety-nine years). In the instant case, the trial judge was presented with a statutory range |9from which to exercise discretion, from a mandatory minimum to a maximum. Thus, under the clear language of the Louisiana Supreme Court, this is not a case in which the trial court was mandated to instruct the jury and to allow the defendant to argue concerning the mandatory minimum sentence. See State v. Johnson, 01-2350 (La.App. 4 Cir. 6/12/02), 820 So.2d 1223, 1226-27, writ denied, 02-1948 (La.10/3/03), 855 So.2d 293 (case concerned crime of possession of heroin, which carried a sentencing range of imprisonment at hard labor for a minimum four years to a maximum ten years). The instant case differs from the line of cases concerning mandatory life imprisonment or capital punishment, as here the trial court could impose a sentence within the range set forth by the statute. Further, there is no authority to mandate a different approach simply because the sexual battery statute at issue in this case presents a longer mandatory minimum sentence. The trial court still retains discretion within the sentencing range. Allowing argument of sentencing regulations would inject irrelevant considerations into the jury’s deliberations as to guilt. See Harris, 247 So.2d at 850. Accordingly, the trial court did not err in granting the State’s motion in limine to prevent the defendant from informing the jury of the mandatory minimum sentence.
This assignment of error is without merit.
NO. 3 — DENIAL OF MOTION TO SUPPRESS INCULPATORY STATEMENTS
In his third assignment of error, the defendant contends that the trial court committed reversible error by denying his motion to suppress inculpatory statements. The defendant argues that the trial court admitted the statements despite his testimony that his mental state precluded him from knowingly and |lnintentionalIy waiving his Miranda[2] rights to counsel and to remain silent, and that he was induced to sign a waiver of rights and make a statement by the use of threats and inducements by the investigating officer during custodial interrogation.
In addition to showing that the Miranda requirements were met, the *54 State must affirmatively show that the statement or confession was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises in order to introduce into evidence a defendant’s statement or confession. La.Rev.Stat. Ann. § 15:451. The State must specifically rebut a defendant’s specific allegations of police misconduct in eliciting a confession. State v. Thomas, 461 So.2d 1253, 1256 (La.App. 1st Cir.1984), writ denied, 464 So.2d 1375 (La.1985). In determining whether the ruling on the defendant’s motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).
In the instant case, the defendant’s testimony at the motion to suppress hearing directly contradicted the testimony given by STPSO Detective Scott, who advised the defendant of his Miranda rights, interviewed him, and took his statement on August 16, 2010. The defendant testified that while he was at the police station, he was under the influence of not only alcohol, but alcohol withdrawal. He claimed that he became physically ill, flustered, confused, and began saying anything in order to go home and have a drink. In contrast, Detective Davis testified at the hearing that when the defendant came to the police station he | nseemed to be fine and relaxed, and that he was not noticeably shaking. He said he did not notice any odor of alcohol on the defendant’s breath or anything unusual to suggest that he was intoxicated. Nor did he observe any symptoms of alcohol withdrawal. He also said that the defendant never told him that he was suffering from alcohol withdrawal.
The testimony of both men establishes that, upon the defendant’s arrival at the police station on the morning of August 16, he was advised of his Miranda rights by a police officer who read them from a form. The dispute concerns whether the defendant knowingly and willingly waived those rights. Detective Davis testified that the defendant indicated he understood the rights portion of the form and the waiver of rights portion of the form, and that he signed both portions in acknowledgment. Detective Davis testified at the hearing, and again at trial, that he felt the defendant wanted to speak to him and give his version of events, and that he was convinced by the defendant’s words and actions that at all times he understood his rights and that he willingly, knowingly, intelligently, and voluntarily waived them. Detective Davis denied using any threats, promises or coercions to get the defendant to execute the waiver. He did not observe the defendant to be intoxicated, mentally challenged, or in any condition such that he would not understand his rights and waiver of them. Additionally, the defendant never asked for an attorney or indicated a desire to stop speaking.
The defendant, however, claimed that he was in an incapacitated state due to alcohol withdrawal and was unable to knowingly and intelligently waive his Miranda rights. At the suppression hearing, he testified that everything was a blur that morning, and that he was confused and unprepared. The defendant claims he only signed the waiver of his Miranda rights so the interview could continue and he could clear matters up. He claimed that he had “no idea” that he was waiving [ 12his rights. At trial, he testified that another reason he signed the waiver was that he thought he was already under arrest.
The defendant further claims that he only gave the recorded statement because of representations made by Detective Davis which led him to believe that if he *55 just said what the officer encouraged him to say, that he would have been able to go home and have a drink. The defendant explained that he changed his statement from the actual facts due to prompting and coercion by Detective Davis. Specifically, he claims the detective told him to say that he acted “in bad judgment,” that S.D. had panties on, and that he and S.D. were in the kitchen. At trial, the defendant testified that he made the statement he did under threat of going to jail for the rest of his life if he did not submit to the format that was presented. He also testified at the hearing that once Detective Davis started recording, he would stop the tape, yell at the defendant and tell him what and how to say something, then rewind the tape and start recording again. The defendant claimed that the recorded statement played in court was about the third or fourth take. After the statement was taken, Detective Davis arrested the defendant.
At the hearing, Detective Davis denied coercing the defendant or encouraging him to say anything in particular. He also denied erasing any part of the taped statement or rewinding it and recording over any part. He testified at the hearing that he never instructed the defendant on what to say, promised him that he would be able to go home if he just told the truth, or threatened him with anything if he did not make a statement. He believed all of the defendant’s conversations with him that morning were freely and voluntarily given.
The defendant was also questioned at the suppression hearing regarding information about his drinking behavior that he provided to a nurse upon his admission into jail. The nurse asked when he had last had a drink, how much he |isdrank, and whether he had experienced alcohol withdrawal. All of the defendant’s answers were inconsistent with his trial and hearing testimony that he had been drinking heavily every day for many weeks. The defendant explained that he either did not remember what he told the nurse, or that he intentionally gave her incorrect information under the rationale that the less he said he drank, the better things would be for him at that time.
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. See State v. Patterson, 572 So.2d 1144, 1150 (La.App. 1st Cir.1990), writ denied, 577 So.2d 11 (La.1991); See also State v. Sanford, 569 So.2d 147, 150 (La.App. 1st Cir.1990), writ denied, 623 So.2d 1299 (La.1993). The trial court must consider the totality of the circumstances in deciding whether a confession is admissible. State v. Hernandez, 432 So.2d 350, 352 (La.App. 1st Cir.1983). Testimony of the interviewing officer alone may be sufficient to prove a defendant’s statements were freely and voluntarily given. State v. Maten, 04-1718 (La.App. 1 Cir. 3/24/05), 899 So.2d 711, 721, writ denied, 2005-1570 (La.1/27/06), 922 So.2d 544. Further, when a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion, i.e., unless such ruling is not supported by the evidence. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 280-81.
After a careful review of the record, including the recorded statement, we do not believe that the trial court abused its discretion in denying the motion to suppress. The testimony, the recorded statement, and the waiver form clearly establish that the defendant was advised of *56 his Miranda rights and that he 114executed a waiver of those rights. Further, the evidence indicates that the defendant knowingly and intentionally waived his rights. Detective Davis’s testimony at the suppression hearing and at trial, which the trial court found credible, showed that the defendant appeared to understand his rights and demonstrated a desire to speak to the police and explain his version of events. The defendant also admitted that he wanted to talk to the police. Indeed, that is the stated reason that he signed the waiver. The defendant may indeed have been suffering from alcohol withdrawal at the time he was interviewed by Detective Davis, but he did not present evidence at the hearing sufficient to convince the trial court that his condition prevented him from making a knowing and intentional waiver of his Miranda rights. With respect to the statement itself, the trial court also found credible Detective Davis’s testimony that he did not coerce the defendant into admitting to touching S.D. or changing his story. Detective Davis also testified that he did not make any promises to the defendant in exchange for a confession. That the defendant may have subjectively believed that if he cooperated with the police he would have been allowed to leave, does not render his confession involuntary. Finally, on the question of whether Detective Davis forced the defendant to change his story or rerecord portions of the interview, the trial court apparently found Detective Davis’s testimony more credible. The test for voluntariness of a confession requires a review of the totality of the circumstances under which the statement was given. State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, 1053, cert. denied, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997). We conclude, as did the trial court, that under a totality of the circumstances, the defendant’s confession was not involuntary.
This assignment of error is without merit.
11fiNO. 4 — ADMISSIBILITY OF TAPED CONVERSATIONS WITH SPOUSE/SPOUSAL CONFIDENTIAL COMMUNICATIONS PRIVILEGE
In his fourth assignment of error, the defendant contends that the trial court committed reversible error by allowing into evidence taped conversations between the defendant and his wife which were recorded while he was incarcerated at the St. Tammany Parish Jail. The defendant contends that these conversations should have been excluded as inadmissible hearsay under Louisiana Code of Evidence article 804(B)(3), that they are protected as spousal confidential communications under Louisiana Code of Evidence article 504, and that they were obtained in violation of the Electronic Surveillance Act (ESA), Louisiana Revised Statutes section 15:1301, et. seq.
After the defendant was arrested, he made several phone calls from the jail to his wife, which were recorded and played for the jury. During one of these calls, the defendant told his wife “[i]f I deserve for my life to be over for a two-second incident, then I guess that’s just the way it is.” A review of the calls also depicts the defendant and his wife discussing the charges against him, and the defendant offers some denials. In none of these conversations does the defendant expressly admit to the allegations against him.
The defendant first argues that the trial court erred in admitting these conversations because they are inadmissible hearsay. He contends that the statements he made in those calls are not so far contrary to his penal interests that they constitute statements against interest pursuant to *57 Louisiana Code of Evidence article 804(B)(3). However, we note that the defendant did testify at trial and therefore was not unavailable, which makes reliance upon Article 804(B)(3) inappropriate. Further, we find that the statements were properly admitted under 116the exception to the hearsay rule for party admissions, pursuant to Article 801(D)(2)(a).
The defendant also contends that the statements should not have been admitted because they were protected as spousal confidential communications under Louisiana Code of Evidence article 504. That article provides, in pertinent part:
A. Definition. A communication is “confidential” if it is made privately and is not intended for further disclosure unless such disclosure is itself privileged.
B. Confidential communications privilege. Each spouse has a privilege during and after the marriage to refuse to disclose, and to prevent the other spouse from disclosing, confidential communications with the other spouse while they were husband and wife.
The defendant argues that the statements he made to his wife during those jailhouse phone calls were made privately and never intended for further disclosure. “Where there is a lack of evidence to the contrary, communications between spouses are presumed to be confidential.” State v. Dupuy, 319 So.2d 294, 298 (La.1975) (citing State v. Pizzolotto, 209 La. 644, 25 So.2d 292 (1946)). However, in the instant case, the trial court found that the calls were not protected by the privilege because there was notice that the calls were subject to recording and monitoring.[3] Whether a particular communication is protected as confidential is a question of fact to be determined by the trial court. Accordingly, the trial court must assess the circumstances surrounding the alleged confidential communication and the probable intent of the divulging spouse at the time it was made. See State v. Gaudet, 93-1641 (La.App. 1 Cir. 6/24/94), 638 So.2d 1216, 1222, writ denied, 94-1926 (La.12/16/94), 648 So.2d 386. In the instant case, the |17trial court considered the preliminary question of whether the communication was confidential and concluded that since a warning was given, there could be no reasonable expectation of privacy. We agree with the trial court’s conclusion. Even if the defendant and his wife never intended for the conversations to be disclosed, the fact that they were aware that a third party could monitor or record their conversation destroyed the confidential nature of the communication. See Dupuy, 319 So.2d at 298. Thus, the trial court did not err in admitting the conversations over the defendant’s objection of privilege.
Lastly, the defendant argues that the calls should have been excluded as unlawfully intercepted because a wiretap was not obtained as required under the ESA. While this specific issue is a novel one for this Court, the Fifth and Second Circuits have recently considered a substantially similar issue, and we find those opinions instructive. See State v. Favors, 09-1034 (La.App. 5 Cir. 6/29/10), 43 So.3d 253, writ denied, 10-1761 (La.2/4/11), 57 So.3d 309; State v. Durham, 43,558 (La.App. 2 Cir. 10/15/08), 996 So.2d 642. In both of those cases, the State sought to introduce into evidence phone calls that the defendant made from jail on a recorded line, where the call was preceded by a *58 warning that the call was subject to monitoring and recording. The defendants in those cases filed motions to suppress the recorded calls, arguing that interception of the calls was prohibited by the ESA. Durham’s motion asserted that interception of the telephone communications was prohibited because none of the parties to the conversations affirmatively consented to the interception and recording. However, in that case, the parties stipulated that the calls were preceded by a warning that they were subject to monitoring and recording. Durham, 996 So.2d at 647. In Favors, the defendant argued that the State did not prove that he was aware that the calls were | 18being recorded, though the defendant did not contest the State’s evidence that a warning was given to parties on the call. Favors, 43 So.3d at 258, 260.
Both the Fourth Amendment to the United States Constitution and Louisiana Constitution article I, section 5 protect people and their privacy against unreasonable government intrusion. However, Fourth Amendment rights must be weighted against the governmental and societal interest at stake in maintenance of prisons. The United States Supreme Court has recognized that the limitation of privacy rights of prisoners is acceptable. See Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984).
The Durham court found that the defendant did not exhibit a subjective expectation of privacy in the outgoing calls he made from jail, in part because the record contained a stipulation that each call contained a warning. The instant case is then more similar to Favors, in that there is no stipulation, but the record is clear, and the defendant does not contest, that there was a similar warning before each call. In any event, we agree with the reasoning of the Second and Fifth Circuits, which found that even if the defendant had exhibited a subjective expectation of privacy, it was not one that society was prepared to accept or recognize as reasonable. Favors, 43 So.3d at 259-60; Durham, 996 So.2d at 648. The need for jail and prison administrators to maintain order and prevent criminal activity requires a greater ability to monitor the activities of inmates than would be permitted by the police in society at large. Durham, 996 So.2d at 648.
The Second and Fifth Circuits noted that the ESA adopted the two exceptions provided in its federal counterpart, the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. 2510, et seq. Those two exceptions are: (1) in the ordinary course of duties of investigative or law enforcement officers, Louisiana Revised Statutes section 15:1302(10)(a)(ii), and (2) the consent exception. La.[Rev.Stat,19 Ann. § 15:1303(0(3). “Consent may be express or implied from ‘surrounding circumstances indicating that the defendant knowingly agreed to the surveillance.’ ” Durham, 996 So.2d at 649 (citing U.S. v. Van Poyck, 77 F.3d 285, 292 (9th Cir.), cert. denied, 519 U.S. 912, 117 S.Ct. 276, 136 L.Ed.2d 199 (1996)). In the instant case, as was true for the defendants in both Durham and Favors, the defendant knew that his telephone calls were subject to being monitored and recorded. Unlike in those cases, the State did not present testimony or evidence to show that the calls were monitored and recorded in the ordinary course of business. However, even lacking this information, we find that the State has sufficiently proven that the calls were admissible through the consent exception to the ESA. Accordingly, we find that the trial court did not err in admitting the jailhouse phone calls between the defendant and his wife.
This assignment of error is without merit.
*59 NO. 5 — DENIAL OF REQUEST TO CHARGE A RESPONSIVE VERDICT
In his fifth assignment of error, the defendant contends that the trial court committed reversible error by denying his request to charge the jury that simple battery was a responsive verdict to the crime of sexual battery. In support of his argument, the defendant relies exclusively on State v. Schenck, 513 So.2d 1159, 1165 (La.1987), in which the Louisiana Supreme Court held that simple battery is a lesser and included offense of the crime of sexual battery.
We note at the outset that Louisiana Code of Criminal Procedure article 814 does not list any responsive verdicts for the crime of sexual battery. However, citing Schenck, the defendant argues that every element of simple battery is included in the offense of sexual battery, thus making it a lesser and included offense and an appropriate responsive verdict.
12pSexual battery is defined in Louisiana Revised Statutes section 14:43.1, in pertinent part, as follows:
A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when any of the following occur:
(1) The offender acts without the consent of the victim.
Battery is defined in La. R.S. 14:33, in pertinent part, as follows:
Battery is the intentional use of force or violence upon the person of another[.]
Simple battery is a battery committed without the consent of the victim. La.Rev. Stat. Ann. § 14:35.
The trial court denied the defendant’s request to charge simple battery on the grounds that the statute involving sexual battery had been amended since Schenck was decided in 1987,[4] and that there was a more recent and relevant ease to consider on this issue, State v. Trackling, 04-3222 (La.1/19/06), 921 So.2d 79. In Trackling, the supreme court considered the issue of whether attempted sexual battery was a valid crime, and engaged in an in-depth discussion of the sexual battery statute. The supreme court rejected the classification of simple battery as a responsive verdict of sexual battery. Trackling, 921 So.2d at 83. To characterize the crime of sexual battery as simply a battery of a specific portion of the victim’s |21body “is an incomplete description of the offense that fails to take into account the sexual component that is the gravamen of the crime and that renders the proscribed conduct more egregious than a simple battery.” Trackling, 921 So.2d at 83. We note, as did the trial court, that the crime of sexual battery is contained within the section of the Louisiana Criminal Code concerning sexual offenses (rape and sexual battery) and that sexual battery is a legislatively authorized responsive verdict to the crimes of aggravated rape, aggravated rape of a child under the age of *60 thirteen, forcible rape, and simple rape. La.Code Crim. Proc. Ann. art. 814(A). Simple battery is not a responsive verdict for these crimes. The court in Schenck even noted that including sexual battery as a responsive verdict to the other sexual offense crimes evidenced “a legislative scheme that envisions sexual battery as encompassing conduct falling short of actual rape but which is sexually intrusive and more egregious than a simple battery.” Schenck, 513 So.2d at 1162. Simple battery is located within the section of the criminal code concerning assault and battery. Thus, the crimes of simple battery and sexual battery are not included within the same family of crimes.
We agree with the court’s analysis in Traekling:
To the contrary, although the offense of sexual battery does not require a specific intent to arouse or gratify the sexual desire of either the defendant or the victim, the intentional and non-consensual touching of the specified body parts unquestionably establishes a sexual component to the crime not necessarily addressed by an offense (such as simple battery) defined in terms of intentional use of force against the person of another. In fact, while commission of the offense may require no more than a battery to a specific portion of the victim’s body, the possible punishments are far more severe, precisely because of the sexual nature of the offense. See and compare, LSA-[R.S.] 14:43.1 (imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years) and LSA-R.S. 14:35 (fine of not more than five hundred dollars, or imprisonment for not more than six months, or both).
Traekling, 921 So.2d at 84.
| apThe trial court found the reasoning of Traekling impressive, as do we. We adopt the rationale of Traekling and accordingly, we do not find that the trial court erred in denying the defendant’s request to charge the jury that simple battery was a responsive verdict to the crime of sexual battery.
This assignment of error is without merit.
NO. 6 — DENIAL OF POSTVERDICT JUDGMENT OF ACQUITTAL/INSUFFICIENT EVIDENCE
In his sixth assignment of error, the defendant contends that the trial court committed reversible error by denying his motion for postverdict judgment of acquittal, since the evidence introduced at trial, when viewed in a light most favorable to the State, was legally insufficient and did not reasonably permit a verdict of guilty of sexual battery. Specifically, the defendant argues that the victim’s various statements and testimony were inconsistent, incredible, and totally unsupported by the testimony of the examining physician, Dr. Wetzman. He argues that all inculpatory evidence came, in one form or another, from hearsay statements or testimony of the victim, elicited by adults, through improperly leading and suggestive questioning, inconsistent and incredible on its face, and directly contradicted by medical examination. Therefore, the defendant contends, the jury can only be considered to have disregarded evidence, or the lack thereof, in the case; disregarded the presumption of innocence and the burden of proof; and convicted the defendant solely on the seriousness of the charge, the youth of the victim, or some other equally arbitrary and capricious factor or influence.
The standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude *61 that the State proved the essential elements of the crime and the defendant’s identity beyond a reasonable Indoubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La.Code Crim. Proc. art. 821; State v. Lofton, 96-1429 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La.10/17/97), 701 So.2d 1331. The Jackson standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. State v. Davis, 00-2685 (La.App. 1 Cir. 11/9/01), 818 So.2d 76, 79.
This standard of review, in particular the requirement that the evidence be viewed in the light most favorable to the prosecution, obliges the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. See State v. Mussall, 523 So.2d 1305, 1308-11 (La.1988). Thus, the reviewing court is not permitted to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. See State v. Burge, 515 So.2d 494, 505 (La.App. 1st Cir.1987), writ denied, 532 So.2d 112 (La.1988).
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Thomas, 589 So.2d 555, 570 (La.App. 1st Cir.1991). “Because a determination of the weight of the evidence is a question of fact, this court has no appellate jurisdiction to review it in appeals of criminal cases.” State v. Gordon, 01-0236 (La.App. 1 Cir. 2/15/02), 809 So.2d 549, 552, writ denied, 04-2438 (La.6/24/05), 904 So.2d 733. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a jury’s determination of guilt. See State v. Hendon, 94-0516 (La.App. 1st Cir. 4/7/95), 654 So.2d 447, 450.
| ^The defendant is correct that the State’s case against him hinged primarily upon the statements that S.D. made in the days immediately following the incident, as well as her testimony at trial. At the trial of this matter, S.D. testified that while at her grandmother’s house, her grandmother’s husband, the defendant, touched her private area on her skin using his index finger while she was in the doorway to the kitchen. The incident hurt S.D. She was scared to tell her grandmother, but later that day told her mother what happened. She also testified that she was mad at the defendant that day because he touched her “privates” not because he had thrown her off the bed almost making her hit her head.
In S.D.’s interview with Jo Beth Rickels at the CAC, which was videotaped and played for the jury, S.D. told the same facts that the defendant touched her “privates” which she confirmed on an anatomical drawing. S.D. maintained that the defendant stuck his hand in her underwear and put his “whole entire hand” inside her which hurt. She also told Rickels that she had been angry at the defendant that day because he pushed her off the sofa and she bumped her head.
S.D. was examined by Dr. Ellie Wetz-man of the CARE Center at Children’s Hospital, an expert in the field of pediatrics and child sexual assault, who testified at trial. Dr. Wetzman did not make any physical findings, but did not expect to do so. She concluded that S.D. had been abused based on the history S.D. gave that the defendant touched her private part with his entire hand and that it hurt. Defense counsel cross-examined Dr. Wetz-man regarding the inconsistency between S.D.’s testimony at trial about defendant’s *62 use of a finger rather than use of defendant’s whole hand as S.D. stated during her doctor visit. Dr. Wetzman explained that she did not take S.D.’s testimony about an entire hand literally, but believed that S.D. did experience pain. Dr. Wetz-man admitted that some sexual |?sabuse cases have no physical evidence, so the determination of abuse is based mostly on the child’s history.
It is well settled that if found to be credible, the testimony of the victim of a sex offense alone is sufficient to establish the elements of the offense, even where the State does not introduce medical, scientific, or physical evidence or prove the commission of the offense by the defendant. See State v. Hampton, 97-2096 (La.App. 1 Cir. 6/29/98), 716 So.2d 417, 418. As it pertains to this case, Louisiana Revised Statutes section 14:43.1(A)(1) defines sexual battery as an intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, where the offender acts without the victim’s consent. S.D. testified at trial, consistent with her previous statements, that the defendant intentionally touched her vagina using his hand, or at least his finger. Therefore, the victim’s testimony, which the jury obviously found credible, was sufficient to prove all the elements of sexual battery.
The defendant presented testimony from his wife, C.L., that on the day of the incident, the defendant began drinking early in the morning and took prescription medication, as well as testimony about the defendant’s long-standing alcohol problem. C.L. also testified that S.D. went into the bedroom where the defendant was sleeping and started “aggravating him” and that S.D. fell off the bed and hit her head, which made S.D. angry.
The defendant also testified at trial and denied intentionally touching S.D. He also testified about his alcohol problem and that he was irritated about the babysitting arrangements that day. His explanation for the incident was that while he was in the bedroom sleeping, he was awakened by S.D. laying on top of him and not wearing any underwear. The defendant claimed that he pulled S.D. off of him, picked her up, and threw her in the middle of the bed while yelling to hisjajwife that S.D. was bothering him and not wearing any underwear. The defendant speculated that he must have touched S.D. when he picked her up and put her on the bed.
The defendant’s statement made to Detective Davis was recorded and played for the jury, in which he admitted to touching S.D. on the vagina. The defendant testified at trial that he initially told Detective Davis the same story that he told the jury, but that the detective convinced him to say the incident occurred in the kitchen and that S.D. was wearing underwear.
In the present case, the jury obviously chose to believe S.D.’s testimony regarding what occurred that day. Although there were some inconsistencies between her trial testimony and the pretrial statements she made to Rickels and Dr. Wetz-man, the jury determined that S.D. was credible. We observe that S.D. always maintained that the defendant touched her using a finger or hand, on her vagina, in the kitchen at her grandmother’s house, and that it hurt her. We also note that the defendant’s trial testimony was inconsistent with the taped statement given to police prior to his arrest. The defendant argues that S.D.’s allegations are directly contradicted by Dr. Wetzman’s testimony that her medical examination showed a normal finding. However, the fact that the examining physician found a normal result does not automatically render the *63 victim’s testimony incredible or unbelievable, when the physician also testified that her finding was consistent with a child who had been abused. The fact that the record contains evidence that could conflict with testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. See State v. Busch, 515 So.2d 605, 609 (La.App. 1st Cir.1987). It is the factfinder who weighs the respective credibilities of the witnesses, and this Court generally will not second-guess those determinations. State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047, 1051.
_J_2jTherefore, after carefully reviewing the record in this case, we find that any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt that defendant committed the crime of sexual battery upon S.D. Accordingly, the evidence being sufficient to support the jury’s verdict, the trial court correctly denied the defendant’s motion for postverdict judgment of acquittal.
This assignment of error is without merit.
NO. 7 — DENIAL OF MOTION TO RECONSIDER SENTENCE/ EXCESSIVE SENTENCE
In his seventh, and final, assignment of error, the defendant contends that the trial court erroneously denied his motion to reconsider sentence because the thirty-five year sentence without parole imposed on the defendant, a fifty-seven-year-old, first-felony offender, was excessive, cruel, and unusual under the facts and circumstances of the case, being ten years in excess of the statutory minimum and operating as a de facto life sentence. The defendant also argues that the sentence should be considered in light of the evidence produced at trial which, he argues, even when viewed in a manner most favorable to the prosecution, showed at most a fingertip touching by the defendant of the victim’s vaginal area.
Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. State v. Hurst, 99-2868 (La.App. 1 Cir. 10/03/00), 797 So.2d 75, 83, writ denied, 00-3053 (La.10/5/01), 798 So.2d 962. A sentence is considered 12sfiTossly disproportionate if, when the crime and punishment are considered in the light of the harm to society, it is so disproportionate as to shock one’s sense of justice. Id. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. Id.
■ Louisiana Code of Criminal Procedure article 894.1 sets forth items which must be considered by the trial court before imposing sentence. While the trial court need not recite the entire checklist of Article 894.1, the record must reflect that it adequately considered the guidelines. State v. Williams, 521 So.2d 629, 633 (La.1988). In light of the criteria expressed by Article 894.1, a review for individual excessiveness must consider the circumstances of the crime and the trial court’s stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988). Even when a trial court assigns no *64 reasons, the sentence will be set aside on appeal and remanded for resentencing only if the record is either inadequate or clearly indicates that the sentence is excessive. See La.Code Crim. Proc. Ann. art. 881.4(D); State v. Harris, 601 So.2d 775, 779 (La.App. 1st Cir.1992).
For the crime of sexual battery on a victim under the age of thirteen years when the offender is seventeen years of age or older, the defendant was exposed to a term of imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence. La.Rev.Stat. Ann. § 14:43.1(0(2). Thus, the trial court’s sentence of thirty-five years imprisonment at hard labor, without parole, falls within the statutory guidelines.
At the sentencing hearing in the instant case, the victim’s mother read an impact statement to the trial court, describing her and the victim’s life since the Qcrime and expressing her outrage at the defendant’s actions. Defense counsel pointed out that the defendant’s prior criminal record only consisted of one DUI arrest, and that he had no other arrests for any violent or sexual crimes. In addition, counsel pointed out that the defendant was, and still is, a serious alcoholic and that played some role in whatever happened in this case. With that said, the defense asked the court to consider the testimony and circumstances and the defendant’s prior record. The State, on the other hand, reminded the court of what the defendant said to his wife in the jailhouse phone call following his arrest, when he expressed frustration that a “two-second incident” would affect the rest of his life. The State pointed out that the victim had a life sentence too, in that she would remember what the defendant had done to her, and asked for the maximum penalty.
The trial court, considering the factors of Article 894.1, found the defendant was in need of correctional treatment most effectively provided by his commitment to an institution. In addition, the trial court found compelling that the victim in this case was four years old at the time, which, based upon her age, made her particularly vulnerable, and that the defendant knew that, and was in a position of trust in connection with her.
Based on the facts adduced at trial and at the sentencing hearing, and given the trial court’s wide discretion in the imposition of sentences, we cannot say that the trial court manifestly abused its discretion in sentencing the defendant to thirty-five years at hard labor. We also find that the trial court’s reasons for the sentence adequately demonstrate compliance with Article 894.1.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
GUIDRY, J., concurs.

. In accordance with Louisiana Revised Statutes section 46:1844(W), the victim and her family members herein are referenced only by their initials.

. In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court promulgated a set of safeguards to protect the therein delineated constitutional rights of persons subject to custodial police interrogation. The warnings must inform the person in custody that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612.

. A review of the recording reveals that each call was preceded by an audible warning from the phone company, Evercom, stating:
"This call is subject to monitoring and recording. Thank you for using Evercom.”

. At the time Schenck was decided, in 1987, the sexual battery statute read, in pertinent part, as follows:
[T]he intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender either compels the other person to submit by placing the person in fear of receiving bodily harm ...
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender.
(emphasis added).