EDWIN A. LOMBARD, Judge.
hOn appeal, the juvenile, A.N., argues only that the evidence is insufficient to establish that the aggravated incest occurred after he turned fourteen years of age and, therefore, he should not be subject to sex offender registration and notification requirements upon release from custody.[1] After review of the record in light of the applicable law and arguments of the parties, we affirm the judgment of the juvenile court.

*826
Relevant Facts and Procedural History

At the beginning of the 2011-2012 school term, a creative writing instructor at Lusher Charter School (Brad Richard) received the following poem written by one of his ninth grade students (J.N.) as a part of a writing assignment:
The Touch
I feel your hands on me,
Even though I am asleep.
I can tell the next morning
When you have touched me that night.
I even wake up in the middle of it sometimes.
I have to hold back my screams and sobs.
I try and pretend like I’m still asleep
|2And kick you away from me.
Your words of I love you
Are just lies.
No brother with real love would do that to his defenseless little sister.
You’re a monster.
And I want you out of my life.
And as soon as I’m out of this house,
You will be.
On September 1, 2011, in accordance with school policy, Mr. Richard relayed the poem to the school social worker, Adrienne Petrosini. In turn, Ms. Petrosini spoke to the student, received confirmation from the student that she had been sexually abused by her brother, A.N., and called child protection services. That same day, Officer Stephanie Horae of the New Orleans Police Department (NOPD) child abuse division met with J.N. and accompanied her to the child advocacy center where she underwent a forensic interview conducted by Donald Dooley.
In the interview,[2] J.N. related that she had been molested by her brother from age seven or eight to “about age eleven.” She described in detail the various acts of molestation that continued and “got worse” over a long period of time, stating that he would “make” her give him a “blow job” and, pinning her down, forced her to have anal sex four or five times. She also stated that he ejaculated in her mouth during oral sex. According to J.N., after her father saw her brother grab her buttocks when she was nine or ten years old, her parents kept a closer watch over them. It was not until January 2011, when she was “suicidal” and depressed, that J.N. told her mother of the molestation. However, her mother’s response was |sto wait several weeks to confront A.N. and then, when he denied the allegations, tell him he would have to move out of their shared residence. A.N. remained in his mother’s home for several more months before eventually moving into an apartment with friends. During the interim before he left, J.N. slept in her mother’s room.
Although J.N. told Mr. Dooley that she did not want to press charges against A.N., Officer Horae picked him up that evening and took him to the police station where she interviewed him.[3] When asked if he knew why he was there, A.N. related that his mother had called to warn him and that, as he arrived at the police station, a relative who was an attorney was attempting to call him on his cell phone. A.N. readily admitted having sexual relations with his sister when he was thirteen or fourteen, “probably fourteen by then.” However, according to A.N., it was his sister (eight years old at the time) who initiated the sexual experimentation after she saw her parents having sex. A.N. *827 explained that he had no friends or sexual experience so when his sister “wanted to try something” after looking it up on the internet and grabbed his penis, asking if it got bigger, “I caved.” Thereafter, according to A.N., the siblings devised games together to experiment on each other. A.N. stated in detail various acts which, according to him, were initiated by his sister. He did concede that he suggested that she perform oral sex on him, but insisted that she wanted “to try it.” According to A.N., their attempts at anal sex were unsuccessful. A.N. stated that when his mother first questioned him about the molestation because his sister “was having a nervous breakdown,” he denied it because he was embarrassed.
14Five days later, on September 6, 2011, J.N. underwent a second forensic interview at the Audrey Hepburn Care Center of LSU hospital. This time, in response to questioning, J.N. characterized the molestation as “technically” sexual abuse by her brother. When asked to explain, she stated:
It’s like, I mean they just like, it’s a technical term, and it’s just like I mean I guess it could be considered abuse, and I like, I want counseling, but it’s just I’ve forgiven and I moved on, and I feel like I just, I just kinda [sic] want it to be like over and just like bury the hatchet. Cause I mean he’s my brother....
Most notable, when questioned about when the molestation had occurred, J.N. insisted (contrary to her previous statement) that the molestation ended before her eighth birthday. She explained the discrepancy thus:
Um I was seven years old when it started, and it ended um after sometimes after Katrina and ba[sic], at the end a [sic] school. And then I had nightmares which made it seem really real. And that’s why when I was interviewed previously I said it was four years, but then like, I was like counting it back and it wasn’t, it was like a smaller gap and then I had nightmares.
Similarly, although J.N. again described oral and anal sexual encounters with her brother, she asserted that she did not “really remember” the details, insisting that her brother was “really a good kid” who was “always out there like looking out for everyone else,” even though as the oldest child he had been harshly punished by her father and had always been a “kind of a nerd” with no friends.
On December 29, 2011, the State filed a petition charging A.N. with one count of aggravated incest for engaging in sexual intercourse or sexual battery with his sister, J.N., for a four year period between July 25, 2004, and July 25, 2008. After entering a plea of not guilty, counsel for A.N. filed motions to quash the petition and to exempt him from sex offender registration or, in the alternative, to declare sex offender registration unconstitutional as it applies to a juvenile. The motions were denied and, prior to the commencement of the adjudication hearing |son March 19, 2012, the parties stipulated that the incest had taken place, disputing only the time period in which it took place and, therefore, whether A.N. should be subject to life-long sex offender registration and notification requirements.
The following facts were adduced at the hearing. Mr. Richard testified to receiving the poem and turning it over to Ms. Petrosini. In turn, Ms. Petrosini confirmed that she spoke to J.N. and then called child protective services. Officer Horae testified that she received the copy of the poem from Ms. Petrosini, took J.N. to the child advocacy center for her first forensic interview, and then picked A.N. up at his apartment and took him to the police station where she interviewed him. The au *828 dio statement given by A.N. to Officer Horae was then played for the court. On cross-examination, Officer Horae conceded that in the second forensic interview at LSU hospital, J.N. narrowed the time frame in which the molestation occurred.
Mr. Dooley testified as to his forensic interview with J.N. and the video of the interview was played for the court. Under questioning by the judge, Mr. Dooley reiterated that J.N. told him the molestation occurred when she was between the ages of seven and eleven.
J.N. testified, identifying her brother and conceding that Mr. Dooley had told her the interview would be recorded. Pursuant to defense counsel’s questions, J.N. stated that she remembered the events only and not the timing or sequence of events. She said that when she reported the molestation to her mother she was nervous about “[w]hat would happen to my family.” She agreed that she told Mr. Dooley that the molestation had occurred during a period of time between when she was seven to eleven but explained it was because she had not thought about the timing of events before she talked to Ms. Petrosini and, thus, gave Ms. Petrosini |fiher “best guess” as to the time period. Then, to be consistent, she repeated the same timeframe, ages seven to eleven, to Mr. Dooley. J.N. related that she changed the timeframe in the second interview because she thought about it during the interim and recalled that that the abuse occurred before she started at Audubon Charter School at age eight or nine years old. However, for a “very long time I would have vivid nightmares about reliving these abuse experiences” and “during the nightmares it was just me experiencing it, like, it was happening all over .again.” Accordingly, she agreed with defense counsel that her statement indicating that the molestation continued until she was eleven was a result of the nightmares seeming “real.” J.N. also related that when her brother moved out and shared an apartment with two other college students, she often slept at his apartment without incidents of abuse.
Under questioning by the judge, J.N. related that she wrote the poem because “other ways of coping” with the abuse no longer worked and she “knew that I needed help with it.” Although she was currently in counseling, it began only after the school relayed her poem to child protection services as, even upon being informed of the abuse, her mother failed to contact the police or arrange any type of counselor for her. Moreover, once her brother moved out of the house into an apartment with two male roommates and before she handed in the poem, her mother often drove her (a fourteen year old girl) to her brother’s apartment for overnight sleep-overs. She insisted, however, that she had no discussion with her mother pertaining to the sexual abuse investigation in the interim between the two forensic interviews. She related feeling “slightly guilty” about her brother’s arrest but admitted she wrote the poem because “I knew I needed therapy and I figured that I would be able to get it after this.” She said she was disappointed when her 17mother did nothing after being told of the abuse. However, because she feared getting her brother into trouble, she told no one else. She refused to speak to the DA about the case because they “didn’t care what I wanted in the case.” When asked what she wanted, J.N. stated that she felt only counseling was necessary as “I don’t feel that jail time or registration would be necessary in this case.” She asserted that she never discussed her brother’s potential sex offender registration with her parents but, rather, knew of it from the internet and the television series, “Law and Order.” She reiterated that she did not want her *829 brother to have to register as a sex offender.
After listening to the evidence presented, the court adjudicated A.N. a delinquent, specifically stating that she found J.N.’s more detailed statement on September 1, 2011, the “most accurate and believable.” Further, the court found that A.N. was over the age of fourteen when the abuse occurred. Accordingly, at the disposition hearing on June 27, 2012, the court ordered that A.N. be placed in secure care until his twenty-first birthday and, upon release, register as a sex offender.

Discussion

On appeal, counsel assigns five overlapping errors but, rather than discussing them separately, submits to the court one long argument apparently devised to include all assignments of error. To the extent possible, we separate the arguments out in accordance with the purported errors initially assigned by counsel.
| ⅜Assignment of Error I
On appeal, appellate counsel first argues that the evidence is insufficient under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to prove that the aggravated incest occurred after A.N. turned fourteen years of age.
Pursuant to La.Rev.Stat. 14:78.1, aggravated incest is “the engaging in prohibited acts” with a person who is under eighteen and related, including a sister. The prohibited acts include sexual battery, second degree sexual battery, carnal knowledge of a juvenile (La.Rev.Stat.l4:78.1(B)(l)), as well as “[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.” La.Rev.Stat. 14:78.1(B)(2).
The State’s burden of proof is the same in a juvenile adjudication proceeding as in a criminal proceeding, i.e., the State must prove every element of the alleged offence beyond a reasonable doubt. La. Ch.Code art. 883. We review a sufficiency of the evidence challenge under the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and, accordingly, must determine “whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984) (citation omitted). “[A]n appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong” and “[w]here there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court.” In re A.J.F., 00-0948, p. 25 (La.6/30/00), 764 So.2d 47, 61 (citations omitted). Accordingly, if the factual findings “are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, where there are two permissible views of the evidence, the fact finder’s choice cannot be clearly wrong and an appellate court may not substitute its opinion for that of the juvenile court judge “who is in the unique position to see and hear the witnesses as they testify.” In re A.J.F., 00-0948, p. 26, 764 So.2d at 62. Thus, absent internal contradiction or irreconcilable conflict with physical evidence, even a single witness’s testimony is sufficient to support a factual conclusion. See State v. Robinson, 02-1869, p. 16 (La.4/14/2004), 874 So.2d 66, 79.
*830 In this case, there is no dispute as to whether the aggravated incest occurred, only whether A.N. was fourteen when it occurred. The victim stated in her first forensic interview (with Mr. Dooley) that she was molested by A.N. (who is almost five years her senior) from the age of seven to the age of eleven. The victim subsequently revised the time frame downward, stating that it occurred before her eighth birthday which, as a consequence, would put her brother under the age of fourteen at the time of the aggravated incest. However, even though the victim insisted no one had discussed the investigation or the ramifications of her brother’s age and, in fact, claimed that she became aware of the issue only through her own internet research and the television series “Law and Order,” the juvenile court judge found the first forensic interview the most believable and, therefore, the more credible. Moreover, on the same day that the victim told Mr. Dooley that the abuse occurred when she was age seven to eleven, A.N. told Officer Horae that |init occurred when he was thirteen or fourteen, “probably fourteen.” Clearly, there is sufficient evidence under the Jackson standard to support the trial court’s finding that the aggravated incest occurred when A.N. was fourteen years old.

Assignment of Error II

Similarly, appellate counsel asserts that the juvenile judge erred in ordering A.N. to comply with the sex offender registration and notification requirements as the crime occurred before his fourteenth birthday.
In accordance with La.Rev.Stat. 15:542(A)(3), a juvenile who had attained the age of fourteen at the time of the offense and has been adjudicated delinquent of aggravated incest is required to register as a sex offender. As discussed, supra, sufficient evidence supports the juvenile judge’s finding that A.N. was fourteen at the time of the offense. Accordingly, this argument is meritless.

Assignment of Error III

Next, appellate counsel argues that the juvenile judge erred in denying the defense’s motion to exempt A.N. from sex offender registration and notification requirements or, alternatively, in failing to conclude that La.Rev.Stat. 15:542 et seq., was unconstitutional as applied to an adjudication of delinquency.
First, counsel submits that in “requiring lifelong reporting,” the State has abandoned its role as parens patriae and has imposed punishment instead of focusing on rehabilitation, which is the focus of juvenile proceedings. In addition, counsel argues that the statute itself is unconstitutional as applied to a juvenile because it is punishment imposed without the constitutional due process of a jury trial.
Counsel misapprehends the purpose and intent of sex offender registration and notification requirements, however. The statutes underlying the registration | nand notification requirements, known generally as Megan’s Laws, are devised to provide parents with information of sex offenders in their neighborhood so that they may better protect their children from sexual predators. Accordingly, the registration and notification requirements are neither punitive in nature nor contrary to the State’s role in protecting those unable to care for themselves. See State ex rel. Olivieri v. State, 00-0172, p. 24 (La.2/21/01), 779 So.2d 735, 749 (concluding that Louisiana’s Megan’s Law is remedial and/or regulatory rather than punitive). Accordingly, this argument is without merit.

Assignment of Error IV

Finally, appellate counsel asserts that the disposition imposed is constitu *831 tionally and statutorily excessive to the extent it requires mandatory sex offender registration for life.
As previously stated, in accordance with La.Rev.Stat. 15:542(A)(3), a juvenile who was fourteen at the time of the offense and adjudicated delinquent of aggravated incest is required to register as a sex offender. This statutory requirement is not punitive in nature. Therefore, the requirement that A.N. comply with the law cannot be excessive. Moreover, even accepting arguendo that non-compliance with the statute was within the juvenile judge’s discretionary authority, the juvenile judge gave adequate reasons for her order, noting A.N.’s continued denial of wrongdoing, the family’s continued concern with the registration requirements rather than the harm done to J.N., and the failure of A.N. to begin therapy either before the adjudication hearing or during the four month interval between the adjudication and disposition hearings. In addition, the juve- ■ nile judge was clearly dismayed by the parents’ failure to report the abuse or seek counseling for their daughter before A.N.’s arrest, the subsequent reduction (after the 1 ^adjudication hearing) of J.N.’s therapy sessions to once a month, and the parents’ apparent lack of understanding as to the seriousness of the situation as evidenced by J.N.’s frequent unsupervised sleep-overs at the apartment of A.N. and his college roommates. This assignment of error is without merit.

Conclusion

The judgment of the juvenile court judge is affirmed.
AFFIRMED.

. A.N.'s birthdate is May 13, 1992, and J.N.’s birthday is July 25, 1997. Accordingly, A.N. is almost five years older than his sister.

. At the time of the interview, J.N. was fourteen.

. At the time of the interview on September 1, 2012, A.N. was twenty years old.