**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2023 KJ 0754**

STATE OF LOUISIANA,
IN THE INTEREST OF D.D.

Judgment Rendered: **JAN 2 6 2024**

\* \* \* \* \* \*

On Appeal from the City Court of East St. Tammany
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2022-3340, Juvenile Division
Honorable Bryan D. Haggerty, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Warren L. Montgomery<br>District Attorney<br>Matthew Caplan<br>Assistant District Attorney<br>Covington, Louisiana<br><br>and<br><br>David Rex English<br>Assistant District Attorney<br>Slidell, Louisiana<br><br>and<br><br>Jeffrey M. Landry<br>Louisiana Attorney General<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>State of Louisiana |
| Joseph "Jay" G. Albe, Jr.<br>Slidell, Louisiana<br><br>and<br><br>Robert C. Stern<br>New Orleans, Louisiana | Counsel for Defendant/Appellant<br>D.D. |

\* \* \* \* \* \*

**BEFORE:  McCLENDON, HESTER, AND MILLER, JJ.**

**McCLENDON, J.**

The juvenile, D.D.,[1] was alleged delinquent by petition in juvenile court based on one count of second degree rape, a violation of LSA-R.S. 14:42.1(A)(1). D.D., who was fourteen years old at the time of the alleged offense, denied the allegation in the petition. Following an adjudication hearing, the juvenile court adjudicated D.D. delinquent as alleged and imposed a disposition of commitment to the Department of Public Safety and Corrections, Office of Juvenile Justice, until his twenty-first birthday. The juvenile court also notified D.D. of his requirement to register as a sex offender pursuant to LSA-R.S. 15:542 and LSA-Ch.C. art. 884.1. D.D. now appeals, designating five assignments of error. For the following reasons, we affirm the adjudication and disposition.

## STATEMENT OF FACTS

On the evening of December 27, 2021, D.D.'s sister, B.D., drove D.D. and the victim, T.W.,[2] who was D.D.'s girlfriend at the time, to John Slidell Park in Slidell, Louisiana. D.D. asked B.D. to leave the car so he could talk to T.W. alone. After B.D. exited the vehicle, she rode her skateboard around the park and met up with a friend, N.S. Approximately thirty minutes to one hour later, B.D. and N.S. returned to B.D.'s vehicle, after which B.D. drove T.W. home.

In July of 2022, T.W. reported to Alyssa Roberts, a youth camp counselor at First Baptist Church Slidell, that D.D. raped her on the night that she went to John Slidell Park with D.D. and B.D. Youth pastor Edward Chase Stanley informed T.W.'s mother, E.W., of the allegation. Following an investigation by the Slidell Police Department, officers arrested D.D. for the second degree rape of T.W.

## ASSIGNMENTS OF ERROR ONE AND TWO

In his first and second assignments of error, D.D. argues that the evidence was insufficient to adjudicate him delinquent for second degree rape. Specifically, D.D.

---

[1] In the interest of protecting the identities of the juvenile and the minor victim involved in this matter, we refer to the juvenile and the minor victim, as well as witnesses whose names can reveal their identities, only by their initials. See LSA-Ch.C. art. 412; LSA-R.S. 46:1844(W); Uniform Rules of Louisiana Courts of Appeal, Rule 5-2.

[2] T.W.'s date of birth is April 1, 2008. She was thirteen years old at the time of the offense.

2

contends that the juvenile court failed to consider contradictory evidence regarding T.W.'s demeanor, appearance, and behavior following the alleged assault.

In a juvenile adjudication proceeding, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. LSA-Ch.C. art. 883. The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. **State in the Interest of J.S.**, 2018-1245 (La.App. 1 Cir. 12/21/18), 268 So.3d 311, 316. Accordingly, in delinquency cases, the standard of review for the sufficiency of evidence is that enunciated in **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *i.e.*, whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821(B).[3] Further, because a review of the law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to determine if the juvenile court was clearly wrong in its factual findings. **State in the Interest of J.S.**, 268 So.3d at 316.

Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the trier of fact. **State in the Interest of T.C.**, 2018-1246 (La.App. 1 Cir. 12/21/18), 269 So.3d 716, 719. Moreover, conflicting testimony as to factual matters is a question of the weight of the evidence, not its sufficiency. **Id.**; see also **Tibbs v. Florida**, 457 U.S. 31, 46, 102 S.Ct. 2211, 2220-21, 72 L.Ed.2d 652 (1982). A reviewing court "must recognize that the juvenile court judge observed the conduct and demeanor of the witnesses and was in the best position to determine credibility and weigh the evidence." **State in the Interest of E.S.**, 2018-01763 (La. 10/22/19), 285 So.3d 1046, 1056. Accordingly, the trier of fact's determination as to the credibility of a witness is a question of fact afforded great deference, and its determination will not be disturbed unless it is clearly contrary to the evidence. **State in the Interest of T.C.**, 269 So.3d at 719.

---

[3] In the absence of specific procedures provided by the Louisiana Children's Code, the court shall proceed in accordance with the Louisiana Code of Criminal Procedure. See LSA-Ch.C. art. 803; **State in the Interest of J.S.**, 268 So.3d at 316, n.3.

3

The State was required to prove beyond a reasonable doubt that D.D. had sexual intercourse with T.W. without her consent and that T.W. was "prevented from resisting the act by force or threats of physical violence under circumstances where [she] reasonably believe[d] that such resistance would not prevent the rape." LSA-R.S. 14:42.1(A)(1); **State v. Ard**, 2022-0230 (La.App. 1 Cir. 12/22/22), 361 So.3d 473, 488, writ denied, 2023-00281 (La. 9/26/23), 370 So.3d 471.

At the adjudication hearing, T.W. testified that on the night of December 27, 2021, she went to John Slidell Park with B.D. and D.D. Upon arriving at the park, B.D. exited the vehicle to ride her skateboard, and T.W. left to use the restroom. After she returned to B.D.'s vehicle, D.D. raped her. T.W. testified that D.D. was playing music from his phone during the rape, and the rape continued for approximately "eight or nine songs[,]" or thirty minutes. T.W. attempted to resist and pleaded with D.D. to stop, but he ultimately overpowered her and placed his hand over her mouth. D.D. eventually stopped once B.D. called his phone. B.D. and her friend, N.S., arrived at the vehicle about two or three minutes later.

After T.W. reported the incident to youth camp counselor Alyssa Roberts in July of 2022, T.W. was interviewed at the Children's Advocacy Center (CAC). T.W.'s CAC statement was largely consistent with her testimony at the adjudication hearing. She explained that after she returned to B.D.'s vehicle, D.D. seemed nervous. He grabbed her arms, pushed her down onto the back seat, and got on top of her. He held her down with one hand and removed both of their pants. T.W. repeatedly told D.D. "no," to stop, and to get off of her. She attempted to push him off, but was unsuccessful. T.W. testified that D.D., while using his body to pin her down, grabbed "his thing" and inserted it into her vagina. T.W. began to scream and cry, and begged him to stop. D.D. put his hand over her mouth and told T.W. to look at him. When she looked at him, he told her that if she looked away, he would not stop. T.W. described D.D. playing music to cover up the noise. D.D. continued until B.D. called him to tell him she was coming back to the vehicle. After they were dressed, D.D. told T.W. not to talk about what had happened.

Subsequent to T.W.'s CAC interview, a forensic medical examination was scheduled at the Audrey Hepburn CARE Center of Children's Hospital in New Orleans.

4

Dr. Paige Culotta, a forensic pediatrician, conducted the examination, during which T.W. disclosed being forcibly raped by D.D.

Detective Matthew Bauer with the Slidell Police Department investigated the allegation against D.D. During the investigation, Detective Bauer personally observed the CAC interview and reviewed Dr. Culotta's report. Further, T.W.'s mother, E.W., provided Detective Bauer with T.W.'s journal, which contained multiple entries detailing the sexual assault. Detective Bauer found T.W. to be credible, as she consistently provided the same specific details of the incident. Based on his investigation, Detective Bauer brought D.D. in for questioning and subsequently arrested him.

E.W., learned of the allegations after T.W. reported that she had been raped by D.D. to Alyssa Roberts at a youth camp in July of 2022. While T.W. was still away at camp, E.W. searched T.W.'s room and found her journal hidden in a vent. T.W. detailed the rape in her journal. E.W. testified that she began to notice a difference in T.W. somewhere around late December of 2021 to January of 2022. E.W. testified that T.W. was once a "vibrant child" who used to sing at church, but after the assault, T.W. no longer sang, completely changed her appearance, and began harming herself.

D.D. testified that he and T.W. discussed having sex prior to visiting the park on December 27, 2021. Once they arrived at the park, B.D. left the car, and T.W. stayed in the vehicle to talk with D.D. After a few minutes, they began kissing, and T.W. indicated she wanted to have sex. They then undressed each other, after which T.W. grabbed D.D.'s penis and inserted it into her vagina. D.D. testified that several minutes later, he "realized that what [they] were doing was [one] hundred percent wrong[,]" and stopped. D.D. was adamant that T.W. did not tell him no, did not tell him to stop, and did not scream or cry. When asked whether it was his position that T.W. was "the aggressor" or "the one who wanted to have sex," D.D. stated, "[i]t was mutual." D.D. denied exerting any force on T.W.

On appeal, D.D. argues that the contradictory testimony of defense witnesses regarding T.W.'s demeanor, appearance, and actions following the incident casts doubt on T.W.'s credibility. D.D. contends that the testimony of B.D. and N.S., who were present approximately two minutes after the alleged assault, contradicts T.W.'s

5

testimony. Specifically, D.D. argues that, while T.W. testified she was crying during the rape and walked to the restroom afterwards, B.D. and N.S. testified that T.W. did not appear upset or look like she had been crying, nor did she leave to use the restroom. D.D. further contends that T.W.'s actions in the weeks following the assault, specifically her continued relationship with D.D., "completely undermine any credibility of her being the victim of a violent rape by D.D." Finally, D.D. alleges that T.W. fabricated the journal entries detailing the sexual assault "in an effort to strengthen her accusations of an attack [that] was unwitnessed by anyone else."

After carefully reviewing the record in this case, we find that any rational trier of fact, viewing the evidence presented at the adjudication hearing in the light most favorable to the State, could find the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that D.D. committed the crime of second degree rape upon T.W. If found to be credible, the testimony of a sexual assault victim alone is sufficient to establish the elements of the offense, even if the State does not introduce medical, scientific, or physical evidence to prove that the juvenile was the individual who committed the crime. **State in the Interest of E.S.**, 285 So.3d at 1057; **State v. Lilly**, 2012-0008 (La.App. 1 Cir. 9/21/12), 111 So.3d 45, 62, writ denied, 2012-2277 (La. 5/31/13), 118 So.3d 386. Moreover, the fact that the record contains evidence that could conflict with testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. It is the trier of fact who weighs the respective credibility of the witnesses, and this court generally will not second-guess those determinations. **State v. Lilly**, 111 So.3d at 63.

Herein, T.W.'s testimony and pre-trial statements consistently recounted that once D.D. was alone with T.W. in the car, he forcibly pushed T.W. onto the back seat, removed her pants, and inserted his penis into T.W.'s vagina without her consent. She repeatedly asked him to stop, and, although she tried to resist, D.D. held her down with the weight of his body, rendering her immobile. This testimony alone was sufficient to adjudicate D.D. delinquent of second degree rape.

Furthermore, in addition to T.W.'s testimony, the State introduced evidence which corroborated T.W.'s allegations that D.D. raped her, primarily through T.W.'s journal,

6

wherein she contemporaneously recounted the details of the incident. T.W. testified that she began creating the journal entries approximately one week after December 27, 2021, and continued to do so for about two weeks. T.W. further testified she hid the journal in a vent, and E.W. testified she discovered it in a vent after T.W. reported the rape in July of 2022. Based on the various writing instruments and writing methods used, Detective Bauer testified that the entries appeared to be multiple entries written over a period of time. Finally, the juvenile court found the journal entries to be consistent with T.W.'s previous descriptions regarding the rape. Accordingly, we find no merit in D.D.'s accusation that T.W. fabricated the journal entries.

Moreover, D.D.'s argument that the contradictory evidence presented at the adjudication hearing undermines T.W.'s credibility is unpersuasive. See **State in the Interest of E.S.**, 285 So.3d at 1057. We note that T.W. always maintained that D.D. forcibly removed her clothes and inserted his penis into her vagina without her consent. T.W. also explained that her actions in the weeks following the rape were motivated by pain, fear, and shame, and that she was afraid to break up with D.D. See **State v. Gullette**, 43,032 (La.App. 2 Cir. 2/13/08), 975 So.2d 753, 759-60 (sufficient evidence existed for second degree rape conviction, despite victim's actions in drinking coffee and smoking cigarettes with defendant and failing to seek help after incident, where the victim explained that her actions following the rape were motivated by fear of further harm).

Ultimately, the juvenile court was in the best position to determine the credibility of the witnesses in this case and whether such contradictory testimony should render the State's evidence insufficient. The juvenile court specifically found inconsistencies in B.D. and N.S.'s testimony, and found T.W. credible and D.D. not credible. (R. 409-14). We defer to the juvenile court judge as the trier of fact to give great weight to T.W.'s testimony, particularly in light of such express findings of credibility. **State in the Interest of E.S.**, 285 So.3d at 1058. Additionally, as noted *supra*, although T.W.'s testimony is the only direct evidence of the offense, a victim's testimony alone is sufficient for purposes of a sufficiency of the evidence review pursuant to the **Jackson** standard. Therefore, we cannot say that the juvenile court's determination was irrational under the

7

facts and circumstances presented. See **State in Interest of E.S.**, 285 So.3d at 1057-58. Accordingly, these assignments of error are without merit.

## ASSIGNMENT OF ERROR THREE

In his third assignment of error, D.D. argues that the juvenile court demonstrated bias toward the State when it limited questioning of the witness M.H., T.W.'s friend, thereby depriving him of a fair trial. D.D. contends that the juvenile court demonstrated further bias by failing to interfere when the State asked Detective Bauer "blatantly improper questions" regarding T.W.'s credibility.

At the adjudication hearing, counsel for D.D. questioned M.H., seeking to establish that T.W. and M.H. were in a romantic relationship in January of 2022, prior to the termination of T.W. and D.D.'s relationship. The juvenile court objected to the line of questioning, noting that it did not see the relevance and warning defense counsel to be cautious due to the witness's age. Defense counsel asked to approach, at which point an off-the-record discussion occurred.

We note that it is unclear from the record whether or not D.D. raised an objection. However, even if D.D. had objected to the juvenile court's action, any error was seemingly cured, as after the off-the-record discussion, defense counsel was able to elicit further testimony regarding M.H.'s romantic relationship with T.W. Clearly, D.D. was not prevented from questioning M.H. about her relationship with T.W., and D.D. failed to show how the juvenile court's action deprived him of a fair trial.

On appeal, D.D. also contends that, had the juvenile court not interfered, defense counsel would have questioned M.H. regarding a youth group event in an effort to undermine T.W.'s credibility. However, the record is devoid of any indication that defense counsel informed the juvenile court that he wished to question M.H. further regarding the youth group event, or that the juvenile court limited defense counsel's questioning regarding that event. We note that after asking M.H. an additional question about her relationship with T.W., defense counsel tendered the witness without any attempt to question M.H. regarding the youth group event. Defense counsel also failed to make a proffer of the testimony he wished to elicit. Thus, D.D. again failed to demonstrate that he was deprived of a fair trial.

8

With respect to Detective Bauer, he initially testified, unsolicited, that he believed that T.W. was credible and told the truth. When the State pointedly asked whether he thought T.W. was credible, Detective Bauer responded affirmatively. While D.D. is correct that the juvenile court did not object to the State's questions, we note that D.D., likewise, did not object to the State's questions or Detective Bauer's unsolicited responses.

After a thorough review of the record, we find that D.D. failed to adequately preserve the issue of bias on the part of the trial court for appeal. To preserve the right to seek appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error as well as the grounds for that objection. See LSA-C.Cr.P. art. 841(A); **State v. Thomas**, 2019-1027 (La.App. 1 Cir. 2/21/20), 297 So.3d 966, 972. Not only does an objection have to be made, but LSA-C.Cr.P. art. 841(A) also requires that a defendant make known the grounds for his objection, and he is limited on appeal to those grounds articulated at trial. A new basis for objection cannot be raised for the first time on appeal. **Thomas**, 297 So.3d at 972. Here, the record is devoid of any contemporaneous objection regarding Detective Bauer's testimony. Accordingly, in this regard, D.D. has waived review of any alleged error due to his failure to enter a contemporaneous objection prior to his adjudication.[4] See **State v. Carter**, 2010-0614 (La. 1/24/12), 84 So.3d 499, 521, cert. denied, 568 U.S. 823, 133 S.Ct. 209, 184 L.Ed.2d 40 (2012); **State in the Interest of D.G.**, 2018-0373 (La.App. 1 Cir. 9/24/18), 258 So.3d 811, 813. This assignment of error is not reviewable on appeal.

### ASSIGNMENT OF ERROR FOUR

In his fourth assignment of error, D.D. argues that the juvenile court erred in finding T.W.'s mother, E.W., credible and demonstrated a bias in favor of the State by refusing to consider that E.W. knowingly destroyed relevant and possibly exculpatory evidence.

---

[4] If an alleged error is so significant that it violates a fundamental right, the error is reviewable on appeal even absent a contemporaneous objection. See LSA-C.Cr.P. art. 920(2); **State v. Arvie**, 505 So.2d 44, 47 (La. 1987); **State v. Thompkins**, 2018-1032 (La.App. 1 Cir. 2/27/19), 273 So.3d 346, 350 n.4, writ denied, 2019-00666 (La. 9/17/19), 278 So.3d 973. To meet the exception to the contemporaneous objection requirement, the error must cast substantial doubt on the reliability of the fact-finding process. **Thompkins**, 273 So.3d at 350 n.4. That standard is not met here.

9

The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. A reviewing court "must recognize that the juvenile court judge observed the conduct and demeanor of the witnesses and was in the best position to determine credibility and weigh the evidence." **State in the Interest of E.S.**, 285 So.3d at 1056. Accordingly, the trier of fact's determination is entitled to great deference and will not be disturbed unless it is clearly contrary to the evidence. **Id.**; **State in the Interest of T.C.**, 269 So.3d at 719.

At the adjudication hearing, D.D. wished to introduce as evidence text messages between himself and T.W. establishing that they discussed becoming sexually active prior to December 27, 2021. However, the text messages were deleted after T.W.'s phone was reset. According to E.W., she "factory-reset" T.W.'s phone before T.W. went to youth camp. D.D. contends that E.W.'s testimony is contradictory to T.W.'s testimony, wherein she stated that she did not delete any text messages between her and D.D. prior to leaving for camp. Thus, D.D. asserts that E.W., after learning of the rape, intentionally reset T.W.'s phone to delete the relevant text messages.[5]

In the instant case, the juvenile court heard the testimony of all of the witnesses and specifically found E.W. to be credible. The court further noted:

> There was considerable testimony about phone records and one of the points made by counsel was that [E.W.] reset the phone to factory settings. And the suggestion is . . . that that's quite convenient considering the severity of this [offense]. An argument, though, that was set out in testimony but not made in closing arguments, is that [E.W.] testified when she [reset the phone], she had no idea [the offense] even occurred.

Giving deference to the credibility determinations made by the juvenile court, we can find no error in the court's determination that E.W. was credible. See **State in the Interest of E.S.**, 285 So.3d at 1058. Accordingly, this assignment of error is without merit.

---

[5] We further note that D.D. also deleted the text messages between him and T.W. on his own phone after their relationship ended sometime in January or February of 2022.

10

## ASSIGNMENT OF ERROR FIVE

In his final assignment of error, D.D. contends that the requirement that fourteen-year-old juveniles register as sex offenders is unconstitutional under the Sixth and Eighth Amendments to the United States Constitution.

Pursuant to Louisiana's juvenile sex offender registration statutes, a juvenile who has attained the age of fourteen years at the time of the offense and has been adjudicated delinquent of second degree rape is required to register as a sex offender for the duration of their lifetime. LSA-R.S. 15:542(A)(3) and LSA-R.S. 15:544(B)(2)(b).

A juvenile in a delinquency proceeding has the same rights guaranteed to a criminal defendant by the United States Constitution, except the right to a jury trial provided by the Sixth Amendment. See LSA-Ch.C. arts. 808 and 882; **State in the Interest of D.T.**, 2019-1284 (La.App. 1 Cir. 2/21/20), 2020 WL 862311, *4 (unpublished). Consequently, a juvenile is protected under the Eighth Amendment to the United States Constitution, which prohibits the imposition of cruel or excessive punishment. See LSA-Ch.C. art. 808; **State in the Interest of N.S.**, 2020-01171 (La. 12/8/20), 305 So.3d 855, 856.

On appeal, D.D. asserts that lifetime sex offender registration is an adult punishment implemented without the constitutional protections of a jury trial, in violation of his Sixth Amendment right to a trial by jury. He further argues that lifetime sex offender registration is a life sentence that is punitive in nature and in conflict with the rehabilitative focus of juvenile proceedings. Thus, he contends lifetime registration violates his constitutional right against excessive punishment under the Eighth Amendment.

Contrary to D.D.'s assertion, Louisiana's lifetime sex offender registration statutes do not constitute punishment but, rather, are remedial legislation intended to protect public safety. **State v. I.C.S.**, 2013-1023 (La. 7/1/14), 145 So.3d 350, 355-57; **State in the Interest of N.J.**, 2018-1606 (La.App. 1 Cir. 3/13/19), 275 So.3d 267, 271. Thus, the imposition of lifetime sex offender registration pursuant to LSA-R.S. 15:542 is merely the furtherance of a legitimate governmental interest in protecting society from sexual offenders. See **I.C.S.**, 145 So.3d at 355-56. Because sex offender registration is not a

11

punishment, D.D. was not entitled to the constitutional protection of a jury trial. See **State in the Interest of A.N.**, 2012-1144 (La.App. 4 Cir. 8/28/13), 123 So.3d 824, 830, writ denied, 2013-2287 (La. 11/8/13), 125 So.3d 1095 (court held lifetime sex offender registration statutes were constitutional, rejecting juvenile's argument that it was punishment imposed without the constitutional due process of a jury trial).

We, likewise, find no merit in D.D.'s claim that the imposition of lifetime sex offender registration is a cruel and unusual punishment under the Eighth Amendment. Because the lifetime registration is not punitive in nature, it does not constitute an adult punishment. Rather, it is a mandatory requirement subsequent to an adjudication of second degree rape. See LSA-R.S. 15:542(A)(3). Therefore, the requirement that D.D. comply with the law cannot be excessive. **State in the Interest of A.N.**, 123 So.3d at 831.

Moreover, D.D. failed to demonstrate that the effects of the law as applied to him are so onerous as to constitute a cruel and unusual punishment. Based on our review of the sex offender registration statutes, juveniles like D.D. are treated differently than adult offenders, which reflects the rehabilitative, rather than punitive, focus of juvenile proceedings. While the lifetime registration period for a juvenile adjudicated delinquent of second degree rape may be reduced to a period of twenty-five years, no such reduction exists for an adult convicted of second degree rape. See LSA-R.S. 15:544(B)(2) and (E)(2). Moreover, a juvenile required to register as a sex offender is exempt from most community notification requirements. See LSA-R.S. 15:542.1(B) and (C) and 15:543.1. Thus, the legislature balanced the need to protect society from the risk of offenders committing subsequent offenses while still accounting for the youthful circumstances of juvenile offenders. Accordingly, we find that the requirement that D.D. register as a sex offender is not a cruel and unusual punishment in violation of the Eighth Amendment.

Considering the above, we find no merit in D.D.'s assertion that Louisiana's juvenile sex offender registration is unconstitutional such that he should be exempt from those requirements. Where a fourteen-year-old juvenile is adjudicated delinquent for second degree rape, the disposition of such juvenile must include lifetime sex offender

12

registration. LSA-R.S. 15:542(A)(3) and 15:544(B)(2)(b); **State in the Interest of E.S.,** 285 So.3d at 1060. Accordingly, this assignment of error is without merit.

**ADJUDICATION AND DISPOSITION AFFIRMED.**