<u>NOT DESIGNATED FOR PUBLICATION</u>

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 KA 0025

STATE OF LOUISIANA

VERSUS

NICHOLAS CODY FLANAGAN

*Judgment Rendered:* SEP 2 6 2024

\*\*\*\*\*\*\*\*

21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Case No. 44481

The Honorable Charlotte H. Foster, Judge Presiding

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | |
|---|---|
| Scott Perrilloux<br>District Attorney<br>Brett Sommer<br>Assistant District Attorney<br>Livingston, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Jane L, Beebe<br>New Orleans, Louisiana | Counsel for Defendant/Appellant<br>Nicholas Cody Flanagan |
| C. James Rothkamm, Jr.<br>Baton Rouge, Louisiana | |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

BEFORE: McCLENDON, WELCH, AND LANIER, JJ.

**LANIER, J.**

The defendant, Nicholas Cody Flanagan, was charged by bill of information with two counts of sexual battery of a victim under the age of thirteen, in violation of La. R.S. 14:43.1. He pled not guilty and, following a jury trial, was convicted as charged. The defendant filed a motion for post-verdict judgment of acquittal, a motion in arrest of judgment, and a motion for new trial, all of which were denied following a hearing. The trial court subsequently denied the defendant's motion to reconsider motion for new trial and sentenced the defendant to concurrent terms of forty years at hard labor on each count.[1] The defendant now appeals, designating four assignments of error. For the following reasons, we affirm his convictions but vacate his sentences and remand for resentencing.

## FACTS

On January 5, 2022, Br.M. filed a report with the Livingston Parish Sheriff's Office ("LPSO") alleging her boyfriend, the defendant, had been sexually inappropriate with her seven-year-old daughter, B.M.[2] B.M. was interviewed by Christine Roy at the Children's Advocacy Center ("CAC") on January 13, 2022, and January 20, 2022, and examined by Dr. Neha Mehta on February 7, 2022.[3] Following the forensic interviews and medical examination, an arrest warrant for two counts of sexual battery was issued for the defendant.

## SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, the defendant asserts the evidence was insufficient to support his convictions.

---

[1] A motion to reconsider sentence was denied after the trial court granted the defendant's motion for appeal and was, thus, divested of jurisdiction.

[2] We use the initials of the victim and the victim's family members to protect her identity. See La. R.S. 46:1844(W).

[3] Dr. Mehta testified the examination occurred either on February 2 or on February 7. Medical records entered into evidence reflect B.M. was examined on February 7.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. See **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Labee**, 2022-0995 (La. App. 1st Cir. 2/24/23), 361 So.3d 1072, 1076; see also La. Code Crim. P. art. 821(B).

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **State v. Coleman**, 2021-0870 (La. App. 1st Cir. 4/8/22), 342 So.3d 7, 12, writ denied, 2022-00759 (La. 11/21/23), 373 So.3d 460. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Mangrum**, 2020-0243 (La. App. 1st Cir. 2/22/21), 321 So.3d 986, 991, writ denied, 2021-00401 (La. 10/1/21), 324 So.3d 1050.

Sexual battery is defined, in pertinent part, as:

> A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:

3

(1) The offender acts without the consent of the victim.

(2) The victim has not yet attained fifteen years of age and is at least three years younger than the offender.

La. R.S. 14:43.1.

Sexual battery is a general intent crime. Thus, the only intent necessary to sustain a conviction is established by the very doing of the proscribed act. See **Mangrum**, 321 So.3d at 992, n.4.

It is well-settled that, if found to be credible, the testimony of the victim of a sex offense alone is sufficient to establish the elements of the offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. **State v. Lilly**, 2012-0008 (La. App. 1st Cir. 9/21/12), 111 So.3d 45, 62, writ denied, 2012-2277 (La. 5/31/13), 118 So.3d 386. Likewise, in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. **State v. Higgins**, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Accordingly, on appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. **Lilly**, 111 So.3d at 61.

At trial, Zachary Addison, a patrol deputy with the LPSO, testified he was dispatched to a residence in Maurepas around 9:00 p.m. on January 5, 2022, to respond to a complaint made by the victim's mother, Br.M. Deputy Addison described Br.M.'s demeanor as distraught and said Br.M. was pale-faced and appeared to have been crying. Deputy Addison testified no one else was present at

4

the residence upon his arrival, as B.M. was across the street at her grandmother's house. Deputy Addison said he did not speak with B.M. because he was not trained to speak with juvenile victims, but he spoke with Br.M. and asked her to write a voluntary statement. Deputy Addison testified he photographed the back porch area where Br.M. said she witnessed the incident occur.

B.M. testified her birthday was September 22, 2014, and she was eight years old at the time of trial. B.M. said she previously lived with her mother, her sister, and the defendant, whom she identified as Nick, at several different houses. When B.M. was shown the photographs taken by Deputy Addison on January 5, 2022, she said the photographs depicted the house located by the river. Recalling the night the police went to her house, B.M. testified she had gone out on the back porch after the defendant called her to come outside. B.M. answered affirmatively when asked by the State if the defendant's pants were unzipped, and B.M. said the defendant told her to "rub up his private part and nothing else." B.M. testified a few minutes later, her mother opened the back door, hitting her with the door. B.M. said she went to her bedroom, and her mother followed to ask her what happened by the door.

B.M. recalled the CAC interview with Christine Roy where she drew a picture of herself and the defendant on the back porch. The following colloquy ensued in reference to the picture B.M. drew:

Q. Okay. There is a line from your body over to his body. Do you see that?

A. Yes, sir.

Q. What is that?

A. It is -- when I drew it, it was when, by the back door, I drew a line from my mouth to his private part, but I scratched it out from my hand to his private part, because I did touch his private part.

Q. So you made two lines, one from the mouth to his body part, one from your hand to the body part?

A. Yes, sir.

Q. And one of those you scratched out?

A. The mouth to his body part.

Q. Okay. Why did you draw a . . . line from your hand to his body part?

A. Because he made me touch that part.

Q. Do you know what that part is called?

A. A private part.

B.M. said the private part is used for "using the restroom." B.M. testified that other than telling her not to lie, her mother did not talk to her about the incident before she was interviewed by Roy. B.M. said once at another house, the defendant tucked her into bed and made her touch his penis. On cross-examination, B.M. said she saw the defendant's penis when he pulled it out after she walked outside. B.M. testified she made a mistake when she drew the line from her mouth to his penis in her picture for Roy. According to B.M., she told the truth and did not lie about what happened.

Br.M. testified she was in a three-year relationship with the defendant whose birthday is November 8, 1995. Br.M. testified the defendant lived with her and her children in Gonzales before they moved to Maurepas in 2021. Br.M. said on the evening of January 5, 2022, family members came to her house. At one point, the defendant walked out on the back porch, and Br.M. later walked outside to check on him. According to Br.M., she accidentally hit B.M. with the door, who looked "startled" and "caught[.]" The defendant remained hidden behind the door. Br.M. claimed after she told B.M. to go to her room, the defendant grabbed dog food, darted around the corner of the house, and told her he was feeding the dogs. However, she saw him put his penis in his unzipped pants. She then "shoved [her] hand in his pants and asked him what was taking place."

When Br.M. went to B.M.'s room and asked whether the defendant's pants were unzipped and whether his private parts were out, B.M. nodded her head affirmatively. Additionally, B.M. indicated the defendant made her touch his private part. Br.M. asked if this had happened before, and B.M. nodded affirmatively and described the Gonzales house. Br.M. then asked B.M. if the defendant ever touched her, and B.M. raised two fingers, indicating to Br.M. this had occurred twice. According to Br.M., B.M. was mostly nonverbal during their conversation and did not look at her.

Christine Roy, who was accepted as an expert in the field of forensic interviewing, interviewed B.M. on January 13, 2022, and January 20, 2022. During the first interview, which was published for the jury, B.M. said she was seven years old and her birthday was September 22. B.M. told Roy that she did not want to talk about the touching, because she was worried she would get in trouble, but she drew a picture of the incident. At one point, B.M. indicated her mother told her she had to tell a "little bit of a lie" regarding what happened with her stepdad, whom she identified as Nicholas. When asked whether something inappropriate happened more than once, B.M. indicated it had.

At her interview on January 20, 2022, B.M. talked about the picture she had previously drawn. She told Roy she made a mistake by drawing an arrow from her mouth to the defendant's penis. B.M. said she did not want to discuss the arrow from her hand to the defendant's penis, but she said she had touched the defendant's penis while her mother and sister were inside the house. B.M. would instead indicate the picture to express that the incident happened. According to B.M., this happened twice, once by a fire and another time at her old house when she was six. Roy testified that she referred B.M. to the Audrey Hepburn CARE Center for a medical examination based on a recommendation by law enforcement.

7

Doctor Neha Mehta, the medical director of the Audrey Hepburn CARE Center, was accepted as an expert in general pediatrics and child abuse pediatrics. Dr. Mehta explained the gradual nature or process of disclosure, testifying that children may disclose voluntarily, accidentally, or when forced. On February 7, 2022, Dr. Mehta conducted a medical examination of B.M., and prior to the physical examination, Dr. Mehta spoke with B.M., which was recorded. Dr. Mehta testified her medical diagnosis for B.M. was child sexual abuse due to B.M.'s "clear and detailed history of contact to her genital area with a hand" and demonstration of sexual contact using her hands. On cross-examination, Dr. Mehta said there were no physical findings on B.M.'s body indicative of sexual abuse.

The defendant testified he moved in with Br.M. and her children shortly after they started dating, and B.M., who was five or six years old, called him daddy. The defendant said on the night of January 5, 2022, he went outside while everyone was playing a video game to feed the dogs and to urinate off the pier into the river. According to the defendant, the pier was about ten to twenty feet from the back door. The defendant testified to his version of events, as follows:

> A. Well, as I'm about halfway finished, I see something move out the corner of my eye in the doorway. So, I hurried up and put up my stuff and looked and I [saw B.M.] standing there, so I kind of like sped-walk up there and my dog was -- Zeus was right there and he thought that I was trying to play with him, so I reached down and grabbed the food and I was going to, you know, put it somewhere else and tell him, "It's okay, go eat." And about that time that I grabbed the dog food, [B.M.] gets hit by the door.

The defendant testified he had put his penis in his pants, zipped his pants up halfway, and started walking towards B.M. to tell her to go back inside when Br.M. opened the door. According to the defendant, Br.M. shoved her hand in his pants and "started flipping out" but did not let him explain the situation before she went to talk to B.M. for five to seven minutes. The defendant said Br.M. then started to hit him repeatedly, and he left. The defendant stated B.M. did not touch

him, he did not ask B.M. to touch him, and he did not physically force B.M. to touch him that evening. Regarding B.M.'s bedtime routine, the defendant said he would often tuck B.M. into bed, kiss her forehead, and tickle her, but he testified he would only tickle her if Br.M. was in the room. The defendant denied that he ever touched B.M.'s genitals on purpose, except to see if she wet her underwear once.

On appeal, the defendant argues the evidence was insufficient to support two counts of sexual battery as, at most, the State proved only one incident occurred in Livingston Parish. The defendant contends if the bedtime incident occurred as testified to by B.M., then the offense was committed in Ascension Parish. As to the allegation that B.M. touched his penis on the back porch, the defendant argues the State failed to prove beyond a reasonable doubt there was an inappropriate touching, arguing it was a "highly illogical and unlikely scenario[.]"

We first address the defendant's argument that the State failed to establish both incidents occurred in Livingston Parish. Venue is not an essential element of the offense of sexual battery; rather, it is a jurisdictional matter. See La. R.S. 14:43.1; La. Code Crim. P. arts. 611(A) and 615. Objections to venue must be raised by a motion to quash to be ruled on by the court in advance of the trial. **State v. Ford**, 2017-0471 (La. App. 1st Cir. 9/27/17), 232 So.3d 576, 584, writ denied, 2017-1901 (La. 4/22/19), 268 So.3d 295. The defendant did not object to venue prior to or even at trial, and it is well-settled that a defendant cannot contest venue for the first time on appeal. **Id.**; see **State v. Rideout**, 42,689 (La. App. 2d Cir. 10/31/07), 968 So.2d 1210, 1212-13, writ denied, 2008-2745 (La. 9/25/09), 18 So.3d 87. Thus, because the defendant did not file a motion to quash in advance of trial as required by La. Code Crim. P. art. 615, he waived consideration of the issue on appeal. **State v. Clark**, 2002-1463 (La. 6/27/03), 851 So.2d 1055, 1080, cert. denied, 540 U.S. 1190, 124 S.Ct. 1433, 158 L.Ed.2d 98 (2004).

9

The defendant calls B.M.'s credibility into question insomuch as he contends his convictions were based solely on B.M.'s testimony which was not corroborated by physical evidence or eyewitness testimony. However, as noted above, the victim's testimony alone is sufficient to establish the elements of a sexual offense, if found to be credible. **Lilly**, 111 So.3d at 62. The jury heard the testimony of all the witnesses, including B.M.'s trial testimony, the defendant's profession of innocence during his testimony, and B.M.'s statements during the CAC interviews with Roy and interview with Dr. Mehta. While B.M. did not make a detailed disclosure during the initial forensic interview, her subsequent interviews were wholly consistent with her trial testimony. B.M. consistently stated the defendant made her touch his penis on the porch and in her bed, and the defendant touched her genitals in her bed. B.M. made independent, consistent, and detailed statements regarding the defendant's acts of sexual misconduct, which the jury found credible. In reviewing the evidence presented at trial, we cannot say that the jury's determination was irrational under the facts and circumstances presented. See **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662; **Mangrum**, 321 So.3d at 986-1000.

Based on the record before us, the jury could have rationally concluded the defendant forced B.M. to touch his penis and intentionally touched the genitals of B.M. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). After a thorough review of the record, we are convinced that a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find the State proved beyond a reasonable doubt,

10

and to the exclusion of every reasonable hypothesis of innocence, all of the elements of sexual battery as to both counts.

## EXCESSIVENESS OF SENTENCES AND FAILURE TO OBSERVE

## SENTENCING DELAY

In assignment of error number two, the defendant argues the forty-year sentence imposed on each count is excessive under the circumstances of this case. In assignment of error number three, the defendant argues the trial court erred in failing to observe the statutorily required twenty-four-hour delay prior to imposing his non-mandatory sentences. However, we pretermit consideration of these assignments of error due to a patent error discussed hereinafter, requiring his sentences to be vacated. See **State v. Thompson**, 2010-2254 (La. App. 1st Cir. 6/10/11), 2011 WL 3423798, *1 (unpublished).

## MOTION FOR NEW TRIAL

In his supplemental assignment of error, the defendant asserts the trial court erred in denying his motion for new trial based, in part, on newly discovered evidence.

Louisiana Code of Criminal Procedure Article 851 sets forth the grounds for a new trial, in pertinent part, as:

> A. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

> B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:

> . . . .

> (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.

11

Thus, a new trial shall be granted based on Article 851(B)(3) when: (1) new evidence was discovered after trial; (2) the new evidence is material; (3) the failure to discover the evidence was not due to a lack of diligence on the part of the defense; and, (4) had the evidence been introduced, the verdict or judgment of guilty probably would have been changed. **State v. McKinnies**, 2013-1412 (La. 10/15/14), 171 So.3d 861, 868. In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another trier of fact might render a different verdict, but whether the new evidence is so material that it should produce a verdict different from that rendered at trial. The trial court's denial of a motion for new trial will not be disturbed absent a clear abuse of discretion. **State v. Curtin**, 2022-1110 (La. App. 1st Cir. 10/5/23), 376 So.3d 918, 935, <u>writ denied</u>, 2023-01464 (La. 4/23/24), 383 So.3d 603.

At the hearing on the motion for new trial, defense counsel called S.M., B.M.'s paternal grandmother and Br.M.'s former mother-in-law, who testified she was unaware of the criminal proceedings until after the verdict. S.M. testified Br.M. made similar allegations against at least five other men, including S.M.'s sons, and she believed Br.M. induced B.M. to make accusations against the defendant. S.M. testified she thought B.M. "could be manipulated or persuaded to say something that may or may not have happened[,]" and she did not believe the allegations. According to S.M., Br.M. allowed a convicted sex offender to live with her and her family at one point, which concerned S.M. Defense counsel argued S.M.'s testimony established B.M. could have been persuaded by Br.M. to accuse the defendant of sexual misconduct and called Br.M.'s honesty and credibility into question. The trial court denied the motion for new trial, finding S.M.'s testimony was not newly discovered evidence and would have been largely inadmissible at trial.

12

After a careful review of the record, we cannot say the defendant was entitled to a new trial based upon newly discovered evidence. As the defendant argues on appeal, S.M.'s testimony affected witness credibility and constituted impeachment evidence. Newly discovered evidence affecting only a witness's credibility "ordinarily will not support a motion for a new trial, because new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." **State v. Cavalier**, 96-3052 (La. 10/31/97), 701 So.2d 949, 951 (per curiam) (<u>citing</u> **Mesarosh v. United States**, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1, 5 (1956)). Nevertheless, the court possesses the discretion to grant a new trial when the witness's testimony is essentially uncorroborated and dispositive of the question of guilt or innocence and it "appears that had the impeaching evidence been introduced, it is likely that the jury would have reached a different result." **Id.** (citations omitted). In this case, the defendant has failed to show the evidence is of such a nature that it would probably produce a different verdict in the event of retrial. <u>See</u> La. Code Crim. P. art. 854(1). As the trial court noted in denying the motion for new trial, S.M. had no personal knowledge of the offenses at issue, and her testimony was based almost entirely on hearsay. Moreover, had her testimony been introduced at trial, it is not likely the jury would have reached a different result. Thus, the trial court did not abuse its discretion in denying the motion for new trial, and this assignment of error lacks merit.

## PATENT ERROR

Pursuant to La. Code Crim P. art. 920(2), this court routinely conducts a review of all appeals for errors discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. **State v. Anthony**, 2023-0117 (La. App. 1st Cir. 11/3/23), 378 So.3d 766, 775, <u>writ denied</u>, 2024-00027

13

(La. 5/21/24), 385 So.3d 242. After a careful review of the record, we have found patent error related to the defendant's sentences.

As discussed, the defendant was convicted of two counts of sexual battery of a victim under the age of thirteen. Louisiana Revised Statutes 14:43.1(C) provides, in pertinent part:

> (2) Whoever commits the crime of sexual battery on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. **At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.** (emphasis added)

The trial court did not impose the statutorily mandated restriction of benefits on either count. While La. R.S. 15:301.1(A) provides any applicable "without benefits" provision is self-activating, that statute cannot apply where the trial court must exercise discretion concerning any portion of the sentence that is to be served without the benefit of parole, probation, or suspension of sentence. See **State v. Walston**, 2022-0317 (La. App. 1st Cir. 11/4/22), 2022 WL 16707997, *8-9 (unpublished), writ denied, 2022-01809 (La. 9/19/23), 370 So.3d 464. Because the trial court has discretion in assessing the period of time in which the defendant's sentences are to be served without parole eligibility, we must vacate the sentences and remand for resentencing. **Id.** On remand, the trial court is instructed to specify the amount of time to be served without benefits for each count of sexual battery of a victim under the age of thirteen.

We also note the trial court failed to properly advise the defendant of the applicable time period to file an application for post-conviction relief. The transcript reflects after the trial court imposed the defendant's sentences, it advised he had "two (2) years within which to file for post conviction relief[.]" The prescriptive period for filing an application for post-conviction relief is two years after the judgment of conviction and sentence become final under the provisions of

14

La. Code Crim. P. arts. 914 or 922. See La. Code Crim. P. art. 930.8(A). Therefore, after resentencing the defendant, the trial court is instructed to properly advise him of the time period provided in La. Code Crim. P. art. 930.8 for applying for post-conviction relief. See **Thompson**, 2011 WL 3423798 at *1.

Accordingly, we affirm the defendant's convictions, vacate the sentences, and remand the matter for resentencing in accordance with this opinion.

**CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**